P. M. ALDEN *et al.* Exrs.

*v.*

ST. PETER'S PARISH IN THE CITY OF SYCAMORE *et al.*

*Filed at Ottawa November 1, 1895.*

1. PERPETUITIES—*gift to charitable uses not within rule against perpetuities.* A gift in trust for the support of a church and to pay for preaching is within the spirit of the statute of 43 Eliz. chap. 4, which is in force in Illinois, and is excluded by that statute from the operation of the rule against perpetuities, as being a gift in trust for a charitable use.

2. DEEDS—*church officers may take by deed for pious uses.* Deeds made to the rector, church wardens and vestrymen of an unincorporated society of the Protestant Episcopal Church in trust, to be used for church purposes and to pay for preaching, are not void, for want of a grantee capable of taking by deed.

3. RELIGIOUS SOCIETIES—*construction of act of 1845 as to incorporation.* Chapter 25, page 120, of the Revised Statutes of 1845, did not make it obligatory upon religious societies to become incorporated, but merely prescribed how they might do so; and the incorporation of such a society under the statute will not be presumed, in the absence of proof.

4. SAME—*statutory prohibition against receiving lands.* The statutory prohibition against an incorporated religious society receiving more than ten acres of land (Rev. Stat. 1874, p. 292, sec. 42,) will not be extended, on grounds of public policy, to a society not incorporated under the statute.

APPEAL from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

Appellants filed their bill in equity in the circuit court of DeKalb county, at the October term, 1888, to set aside two certain deeds and for partition of the real estate purporting to be conveyed by said deeds. A change of venue was taken to the circuit court of Kane county, where a hearing was had and the bill dismissed for want of equity.

The bill represents that on or about September 10, 1877, James S. Waterman, late of said DeKalb county, was the owner in fee simple of the following described

real estate: Lots 9, 10, 11 and 12, in J. S. and J. C. Waterman's subdivision of lots 1, 2, 3 and 4, of block 24, of the original village of Sycamore, in said DeKalb county, containing twenty-nine one-hundredths of an acre of land; that on that day said James S. Waterman, and Abbie L. Waterman, his then wife, now also deceased, made and delivered to the rector, church wardens and vestrymen of St. Peter's parish, in the city of Sycamore and the diocese of Illinois, otherwise known as "St. Peter's Parish in the city of Sycamore and the Diocese of Illinois," a deed of conveyance of said lots; that on the 11th day of December, 1877, said grantors also executed a deed of conveyance of a farm in said DeKalb county, containing one hundred and sixty acres of land, to said grantee, the express condition in each being "the love and affection" grantors have and bear unto the Protestant Episcopal Church and said parish. The deed of the town lots contains the following exception and reservation: "Excepting and reserving therefrom, during the lifetime of the grantors herein and the survivor of them, the rents, profits and use and income of the two dwelling houses situated on said lots, and such suitable quantity of land immediately about them as may be necessary to the proper enjoyment of the same, with the right to improve and repair said houses, but not to remove or destroy them, said premises to be used for church purposes only, and not sold or encumbered, and shall revert to the grantors, their heirs and assigns, whenever this condition is broken." And the deed of the farm contained a condition and reservation in the following words: "This conveyance is made upon the express condition and trust that the rents, issues and profits of the above described land be devoted to and used for the payment, so far as it may go, of the salary of the rectors of said parish forever, and for no other purpose; and this conveyance is accepted upon the express understanding and agreement that the title hereby conveyed shall immediately revert to and be

vested in the party of the first part, his heirs, executors and administrators, when the income from said land shall be diverted to any other purpose, excepting and reserving therefrom, during the lifetime of the grantors herein and the survivor of them, the rents, profits and use of the above described lands."

James S. Waterman died July 19, 1883, leaving a will, under which appellants were appointed and are still acting as testamentary trustees. He left also a widow surviving, who died before this bill was filed, and her representatives and devisees are now parties defendant.

The bill proceeds on the theory that said conveyances were and are absolutely void, because contrary to the laws of the State of Illinois in relation to the creation of perpetuities, and because the grantee, as a religious society, could not, under the statute, take more than ten acres of land, and it is alleged that, by reason of the premises, Waterman, at the time of his death, still remained and was owner of all of said lands; that the said Abbie L. Waterman, widow of the said James S. Waterman, renounced, under said will, the provision therein made in her favor, and there being no issue of the said James S. Waterman, the said widow elected to take one-half of all the real estate, and that she thereby became and was, at the time of her death, the owner of an undivided one-half of all of said real estate; that under and by virtue of the terms of said will complainants became the holders of the legal title of an undivided one-half of all of said land in trust for the uses and purposes mentioned in said will. The bill further alleges that the said St. Peter's parish is, and was at the times of the execution and delivery of the said deeds of conveyance, a corporation formed for religious purposes under the laws of the State of Illinois for the incorporation of religious societies, and that under such laws the quantity of land mentioned and described in the deed of conveyance secondly above referred to, could not, at the time of the exe-

cution and delivery of said deed, be owned or held by said St. Peter's parish, nor could the grantees in said deed take or hold the lands therein attempted to be conveyed for the purposes therein mentioned, and that for this reason also said last mentioned deed was and is utterly void.

The answer denied the allegation that St. Peter's parish is, and was at the time of the execution of said deed, a corporation formed for religious purposes under the laws of the State of Illinois for the incorporation of religious societies, and on its becoming known that the allegation in the bill as to the incorporation of the church could not be made clear by the proofs, the complainants filed an amendment to the bill in the following words:

"Your orators further represent that it is claimed and pretended by the said St. Peter's parish that it was never incorporated as herein charged, but your orators charge that the contrary thereof is the fact, as herein shown. Your orators charge, however, and insist, that if, in fact, it should appear on the hearing hereof said St. Peter's parish was not an incorporated organization, as herein stated, nevertheless it was at and long before the times of the delivery of the said deeds, and has been continually ever since, a church organization, formed and subsisting for religious purposes only, and to promote and advance the peculiar tenets of the religious sect known throughout Illinois as the Protestant Episcopal Church, and belonging to the diocese aforesaid from and about the time of organization, to-wit, 1856, and differed from other churches of this State, members of said diocese, only in the lack of such corporate entity, and in virtue and effect, and to all intents and purposes, was precisely the same as if it had been duly incorporated, only the legal, technical fact that it had not complied with the statute of the State of Illinois in filing its certificate of organization with the recorder of said DeKalb county, and therefore is and was within the statute of this State and the policy of its laws prohibiting religious corpora-

tions from owning and holding lands in excess of a stated amount, or it should be held, under the law, incapable of taking or holding title to any real estate whatever."

This paragraph was demurred to and the demurrer sustained, leaving the cause to go to a hearing on the rest of the bill.   The bill further alleged that the condition contained in said first mentioned deed has been broken because the lands described have been used for other than church purposes, and that if any title ever passed by said deed, such title has, by reason of the breaking of such condition, reverted, as provided in said deed.

The parish was organized in 1856 as a part of the machinery of the diocese of Illinois.   At that time its purposes were religious altogether, and it has generally been maintained as a parish and church organization since that time.   Some of the early records of DeKalb county and the early records of the church were missing and could not be produced on the trial.   No certificate of organization of the church was found.

WILLIAM R. PLUM, for appellants:

Appellants are proper parties to bring this cause.   It is not true that only the State, by its Attorney General, can complain, for it does not come within the decisions or analogies establishing a rule that only the State can bring suit.   *Alexander* v. *Tolleston Club*, 110 Ill. 65; *Carroll* v. *East St. Louis*, 67 id. 568; *Christian Union* v. *Yount*, 101 U. S. 360; *Gilmer* v. *Stone*, 120 id. 586; *Hamsher* v. *Hamsher*, 132 Ill. 273; *Starkweather* v. *American Bible Society*, 72 id. 50; *Trust Co.* v. *Lee*, 73 id. 142; *Catholic Congregation* v. *Germain*, 104 id. 442; *Germain* v. *Baltes*, 113 id. 29; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Matter of McGraw*, 111 id. 66.

A voluntary society organized for religious purposes is entitled to no greater rights to hold lands in this State than corporations authorized by law, even if, in fact, it can hold any land in perpetuity.   Public policy, at least, forbids it.   *Voorhees* v. *Reed*, 17 Ill. App. 22; Adams & Dur-

ham's Stat. 1831, 45; 1835, 340, 341; 1839, 46; 1845, 342, 343, 346, 347; 1859, 293-295; 1872, 372, 373; Tudor on Charitable Trusts, 372, 375, 374, 19, 20; *Carroll* v. *East St. Louis*, 67 Ill. 568; *People* v. *Gas Trust Co.* 130 id. 296; *Female Academy* v. *Sullivan*, 116 id. 382; *Hamsher* v. *Hamsher*, 132 id. 273; *Rhodes* v. *Rhodes*, 43 id. 252; *Andrews* v. *Andrews*, 110 id. 223; *Christian Union* v. *Yount*, 101 U. S. 352; *Gilmer* v. *Stone*, 120 id. 586; Greenhood on Public Policy, 2, 5; *Baptist Association* v. *Hart*, 4 Pet. 1; *Attorney General* v. *Tancred*, 1 Black. 90; Duke on Charitable Uses, 192, 125; Perry on Trusts, 701; *Matter of McGraw*, 111 N. Y. 107.

Corporations only are capable of holding lands in perpetuity. *Attorney General* v. *Tancred*, 1 Black. 90; *Baptist Association* v. *Hart*, 4 Wheat. 1; *Inglis* v. *Trustees*, 3 Pet. 99.

CARNES & DUNTON, also for appellant.

BOTSFORD & WAYNE, for appellees:

No question of public policy is involved in this case. It is purely a question of law, to be determined from the provisions of our statute bearing upon that question, and the well established propositions of law and equity. *Andrews* v. *Andrews*, 110 Ill. 232; *Heuser* v. *Harris*, 42 id. 425.

The purposes of the gift, as expressed in the deed, are a conveyance of the land for "charitable uses," and as such are not in contravention of public policy, or within the prohibition of the rule relating to perpetuities. *Fuller* v. *Griffin*, 3 Vt. 401; 2 Story's Eq. sec. 1164; 2 Perry on Trusts, sec. 701; *Germain* v. *Baltes*, 113 Ill. 33.

The prohibitory clause of the act of 1845 was not directed so much against religious bodies or associations as against religious corporations, which, by becoming such, could take to themselves title to land. *Catholic Congregation* v. *Germain*, 104 Ill. 440.

The conveyance is made to individuals, as officers of an unincorporated society, in trust, to pay the rents, issues and profits of the land for the salary of the rectors of the parish. Such a deed, we contend, is valid, as being

made for charitable purposes.  *Heuser* v. *Harris, supra;
Ferraria* v. *Vasconcelles,* 31 Ill. 25; *Hadden* v. *Chorn,* 8 B. N.
70; *Sowers* v. *Cyreneus,* 36 Ohio, 29.

Mr. Justice Carter delivered the opinion of the court:

The trial court found that the defendant society was
not a corporation, and did not come within the provisions
of the statute prohibiting corporations formed for reli-
gious worship from holding more than ten acres of land,
and found also that the condition in the first deed con-
veying the lots in question for church purposes only had
not been broken by the renting of such lots and using
the rents for church purposes.  After a careful considera-
tion of the evidence, and the law applicable thereto, we
are satisfied that the case was correctly decided by the
learned chancellor in the circuit court.

It has been repeatedly held by this court that the
statute of 43 Elizabeth (chap. 4) is in force in this State,
and that gifts to charitable uses are, by force of that
statute, excluded from the operation of the rule against
perpetuities.  (*Heuser* v. *Harris,* 42 Ill. 425; *Andrews* v.
*Andrews,* 110 id. 223; *Crerar* v. *Williams,* 145 id. 625.)  It is
also established that a gift for the support of churches,
or to pay the expense of preaching any particular reli-
gious doctrine, comes within the equity, and therefore
within the spirit, of that statute, as a gift for a charita-
ble use.  (*Andrews* v. *Andrews, supra; Crerar* v. *Williams,
supra; Hunt* v. *Fowler,* 121 Ill. 269.)  It is true that the
questions presented for decision by this record, so far as
they (or those of a kindred nature) have heretofore come
before this court for consideration, have arisen under
wills, and not deeds.  But we do not understand the
counsel for appellants to insist that the deeds in question
are void on the ground that, being made to the officers of
an unincorporated society in trust for such society or its
members or directly to such unincorporated society, there
was no grantee capable, in law, of taking by deed.  If

the grant were not one made as a gift for a charitable or pious use, and so not brought within the saving provisions of the statute of 43 Elizabeth, it might be contended that the deeds would be void for want of a grantee capable of taking.  (*German Land Association* v. *Scholler*, 10 Minn. 331.)  But we are of the opinion, conceding that the religious society in question was not incorporated, that the conveyances were made to the rector, church wardens and vestrymen of the society in their official capacity, in trust for a designated charitable and pious use, and are within the provisions of the statute in question, and are not void for want of a grantee capable of taking by deed, but will be upheld and enforced in equity, unless rendered invalid upon other grounds urged by counsel and referred to below.  *Judd* v. *Woodbury*, 2 Root, (Conn.) 298; 20 Am. & Eng. Ency. of Law, 804; *Ferraria* v. *Vasconcelles*, 31 Ill. 25.

The conveyances in question were made to the rector, church wardens and vestrymen of this unincorporated religious society, the one conveying the one hundred and sixty acres being "upon the express condition and trust that the rents, issues and profits be devoted to and used for the payment, so far as it may go, of the salary of the rectors of said parish forever," and the other, conveying the lots, being upon condition that they were to be used for church purposes only.  Both were given for the consideration of love and affection for the church and parish. It is clear that these conveyances constituted a gift in trust for a charitable use.  (*Ferraria* v. *Vasconcelles*, 23 Ill. 403, and 31 id. 25; 20 Am. & Eng. Ency. of Law, 805-809.) And in such a case a court of equity will be inclined to lend its aid in carrying out the purpose of the donor and to give effect to the trust, if it can be done consistently with existing laws.  The questions so far considered have been so often and so uniformly decided that we deem any further discussion of them, and citation of authority in support of the position here assumed, unnecessary.

It is, however, contended,—and this is the principal question in the case,—that this society should be held to be an incorporated church or religious society under the laws of this State, or if it be not held to be a corporation, still, inasmuch as incorporated religious societies are, by the statute, prohibited from taking or holding more than ten (now twenty) acres of land, that on the grounds of public policy the prohibition must extend to all such societies, whether incorporated or not.

In support of the first branch of this contention it is said, that by the statute in relation to the incorporation of religious societies in force at the time of the organization of the church, in 1856, viz., the act of 1845, chapter 25, page 120, (see 1 Adams & Durham's Real Estate Statutes, p. 342,) it was made the duty of the society, or its trustees, to make and file with the recorder of deeds the certificate required by section 45 of that act, and thus become incorporated; and it is further said, that because of the destruction of one of the early records of the church, and also one of the early records of DeKalb county, it is left uncertain whether the duty imposed by the statute was performed or not, and that the presumption must be indulged that the duty imposed by the statute was performed, the law complied with, the certificate made and filed, and the society thus duly incorporated. It is, however, evident that the statute in question did not make it obligatory upon all voluntary religious societies to become incorporated, but merely prescribed the mode by which they might incorporate, and there being no evidence that this society ever took any of the steps prescribed by the statute to become incorporated, or that it ever assumed to act as a corporation, it would be carrying the doctrine of presumptive evidence too far to presume such incorporation. It is a matter of common knowledge that there have been in existence in this State many such unincorporated societies, and so far as the evidence discloses this was one of them. In *Ferraria* v.

*Vasconcelles, supra,* where this court held that the steps. taken in attempting to incorporate a religious society under the act of 1845 were insufficient to create a corporation, Mr. Justice WALKER said (p. 406): "The statute must be at least substantially complied with in its provisions, and all of its express requirements must be observed. We have no power to dispense with such requirements and render illegal acts valid and binding. It is not within the province of the court to question the propriety of such requirements when imposed by the legislature, and in this case they are few, simple and easily performed. But whether they are the most salutary is not a question which we can consider. They have been imposed as a condition to the organization of these corporations, and must be performed before corporate rights. can attach. And this is expressly declared to be the legislative will by the latter clause of the 49th section."

The contention that public policy requires that the statutory limitation on the power to take and hold real estate should be imposed on these unincorporated religious societies by judicial decree, is, we think, equally untenable. Upon becoming incorporated certain legal rights are acquired and certain burdens assumed, as provided by the statute. Without incorporating, these societies cannot exercise these rights that pertain to corporations, and they ought not to be required to assume the corresponding burdens,—at least unless the statute so directs. As pointed out in *Ferraria* v. *Vasconcelles, supra,* and other cases, there are marked distinctions in the powers, property rights and duties of the two kinds of organizations. (*Robertson* v. *Bullions,* 11 N. Y. 243.) There are many corporations closely allied to these church organizations which have been held not subject to the ten-acre limitation, yet it might, as reasonably as here, be contended that public policy requires that they be included in what is usually denominated religious corporations, or corporations organized for religious worship.

(*Hamsher* v. *Hamsher*, 132 Ill. 273; *Gilmer* v. *Stone*, 120 U. S. 586; *Germain* v. *Baltes*, 113 Ill. 29.) In *Andrews* v. *Andrews*, *supra*, it was urged that public policy requires that the value as well as the number of acres should be limited, but it was there said that it was "a sufficient answer to say the statute has authorized such bodies to acquire and hold not exceeding ten acres of land, without any limit as to value or income." Yet ten acres of land in some parts of the State might not be of much value, while in a large city it would be worth many millions. It is for the law-making power to determine what the limit shall be and upon what bodies it shall be imposed, and unless that power imposes on unincorporated religious societies the same restrictions it has placed upon those becoming incorporated, it is not within the province of the courts to do so.

The decree of the circuit court will be affirmed.

*Decree affirmed.*