R. M. PEACE ET AL. v. FIRST CHRISTIAN CHURCH OF McGREGOR ET AL.

Decided December 21, 1898.

**1. Church—Doctrinal Questions in Court—Property Rights.**

Courts have no power to determine, for religious bodies, ecclesiastical or doctrinal questions, and will only inquire into them when property rights become the subject of litigation, and then only so far as to determine those rights.

**2. Same.**

When property has become dedicated to the support of some specific form of religious doctrine, it becomes a trust, and the courts will hear evidence to determine what that doctrine is, in order to ascertain the trust, which they will not permit to be diverted to other and different doctrinal uses, whether a majority or minority of the congregation adhere to such doctrines.

**3. Same—Fact Case.**

See findings of fact, held to be supported by the evidence, upon which a minority of the congregation (styled the "Progressive Faction") was held entitled to recover the property of the "Christian Church of McGregor" from the majority in possession (styled the "Firm Foundation Faction"),—the former being found to represent the original doctrines and practices to the support of which the property was dedicated, and the differences between them being radical and irreconcilable.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*Scarborough & Scarborough* and *Dyer & Dyer,* for appellants.

*Baker & Ross* and *W. K. Homan,* for appellees.

KEY, ASSOCIATE JUSTICE.—Appellee brought suit and obtained a judgment for the property involved in this litigation. The defendants have appealed. The district judge filed the following findings of fact and conclusions of law:

"Findings of Fact. — First. I find that there has existed for many years in Texas and in other States of this country, a body of religious people calling themselves Disciples of Christ, or Christians, and known in the aggregate as the Christian Church, and existing in independent local churches, and having no ecclesiastical tribunal superior to the local church; said local churches being congregational in form of government.

"Second. These churches have no formulated creed or articles of faith, but claim to be guided in their faith and practice by the Bible, and it is and has always been a fundamental principle with them, that nothing more or less than faith in Jesus Christ as the Son of God and the Savior of Men, and obedience to his commands, is to be required to constitute persons Christians, and to entitle them to membership and good standing in said Christian churches.

"Third. They hold to immersion exclusively, as Christian baptism, and they teach that baptism, when preceded by faith in Christ, repentance from sin and a public confession of such faith, is for the remission of sins, but they have never required uniformity in opinion as to this purpose or design of baptism, and it has been their custom and usage from the beginning, and held by them to be in accord with their fundamental principles above stated, to regard and treat as Christians, persons from other Christian denominations, who have been immersed, upon profession of their faith in Christ, and to receive such persons into membership and full fellowship in their churches, whether or not they believe that baptism is for the remission of sins.

"Fourth. It is also a part of their fundamental principles that missionary societies, conventions, and similar voluntary organizations for Christian work, as well as the use of instrumental music in connection with their worship in the churches, are regarded as expedients, concerning which no rule, pro or con, can be made, but regarding which each local church or congregation, and each individual, is allowed liberty in opinion and practice, and they have generally, since the beginning of the denomination, had their general societies and conventions for missionary work, and each of such voluntary organizations being allowed and having free access to and use of their respective church houses or places of worship in which to hold their meetings and transact their business.

"Fifth. In 1883, some twenty or more persons, residing in or near the town of McGregor, in McLennan County, Texas, adhering to the fundamental principles, customs, and usages of said church, as recited in the

foregoing paragraphs, organized a local congregation in McGregor, denominated 'The Christian Church of McGregor,' as one of the local churches of that body, adopting and accepting its principles, customs, and usages, as aforesaid, and on November 24, 1883, said congregation purchased from the Gulf, Colorado & Santa Fe Railway Company the lots in controversy in this suit, paying therefor the sum of $50, raised for that purpose by contributions from the persons composing the said congregation, and in the spring of 1884 erected on said lots the present house of worship, with funds contributed for that purpose by the members of that congregation and their friends. Said lots were purchased and the house erected thereon as a place of worship for said Christian Church of McGregor, and said lots were conveyed by said railway company to W. L. Harrison, A. G. Ament, and J. P. Diffey, original members of said church, as trustees of said Christian Church of McGregor, and the legal title thereto was held by them in trust for the said Christian Church of McGregor, as their place of worship.

"At the time said lots were acquired and said house was erected thereon, and for a number of years thereafter, the Christian Church of McGregor was composed of persons accepting and adhering to the fundamental principles, usages, and customs of the Disciples of Christ or the Christian Church at large, as above set forth.

"Sixth. Within the past ten or twelve years the Christian Church or Disciples of Christ in Texas, have become divided into two factions; those adhering to the principles, usages, and customs above set forth are now designated as the Progressive Faction, and the other as the Firm Foundation Faction. These have become distinct and opposing factions, and church organizations, the difference being, mainly, that the Firm Foundation Faction hold that none have been scripturally baptized, or are Christians, who did not, at the time of receiving baptism, understand and believe that they were being baptized for the purpose of securing a remission of their sins. 'For the remission of sins,' as contradistinguished from 'because of the remission of sins,' as held by some other Christian denominations, and they refuse to receive such persons in their churches without rebaptism, and insist upon excluding such persons from the Christian Church; and the Progressive Faction hold that all persons, who have been baptized upon a profession of faith in Christ, are Christians and are entitled to membership in their churches, regardless of their views, as to whether or not baptism is for the remission of sins, and without rebaptism, and they oppose the exclusion of any from the churches, because of their views of the purpose or design of baptism. The Firm Foundation Faction oppose and do not allow the use of musical instruments in connection with their worship in the churches controlled by them, and oppose the formation of missionary societies, conventions, and like organizations for Christian work, holding that such practices are sinful and in violation of the faith of the church, and forbid the use of their church houses and property by such organizations for meeting purposes; while the Progressive Faction holds that the use of musical in-

struments in the churches and the formation of such societies and conventions are mere matters of expediency, concerning which individuals may exercise their preferences without affecting their standing in the church, and the Progressive Faction generally use musical instruments in their churches, in connection with their worship, and organize Missionary, Christian Endeavor, and Ladies' Aid Societies in their local churches, and participate in the general conventions and general missionary societies of the Christian Church at large.

"Seventh. Immediately prior to September, 1897, the membership in the Christian Church of McGregor numbered about eighty, a large majority of whom adhered to the principles, usages, and customs of the Firm Foundation Faction, but no formal action of the congregation forming the said church was taken prior to the separation of the two factions during said month, declaratory of its doctrines and principles, or what usages or customs it would follow; nor was any meeting of the members thereof called to discuss or act upon such question, nor was the same in any way submitted to the membership for decision by the elders; instead thereof, the elders, who are elected by the members, and who have control and direction of the spiritual welfare of the church, aligned it with the Firm Foundation Faction, and permitted only its principles and doctrines to be taught in the church and its customs and usages to be followed, and would not permit those adhering and holding in doctrine with the Progressive Faction to hold religious services, or preach their principles and doctrines in the church building, and in this they were supported by a majority of the members of said congregation.

"Eighth. In September, 1897, some of the members of the Christian Church of McGregor engaged Rev. B. B. Sanders, a minister of the Christian Church, to hold a meeting in the town of McGregor but not in the church building, and announced the fact at the regular meeting of the church on Sunday, September 12, when G. A. Trott, one of the defendants and one of the elders of the church, announced publicly in the church that he did not indorse Sanders and that the church would have nothing to do with his meeting; and on September 16th said Trott and R. M. Peace, another elder and also defendant herein, published a notice in a local newspaper to the effect that the approaching meeting by Sanders was not authorized by the "Church of Christ" in McGregor, and that they did not recognize Sanders as a representative gospel preacher.

"Ninth. On September 16, 1897, those members of the Christian Church of McGregor who held with the Progressive Faction, twenty-one in number, claiming to be the original Christian Church of McGregor, and claiming that the other members had departed from the fundamental principles and doctrines of said church, prepared, and on September 20th caused to be filed with the Secretary of State, a charter for said church, designating it in said charter as the First Christian Church of McGregor, and said corporation is plaintiff in this suit.

"Tenth. On September 23, 1897, defendants G. A. Trott and R. M. Peace, elders as aforesaid, locked the church house and took possession

thereof for themselves and the other defendants, all of whom adhere to the Firm Foundation Faction, claiming that they are the original Christain Church of McGregor, and defendants' now hold exclusive possession of the church property against plaintiff corporation and those composing said corporation.

"'Eleventh.   The Christian Church of McGregor has been, since about the 12th day of September, 1897, divided into two factions, having no affiliation with each other and meeting for worship at different places in the town of McGregor, the majority represented by defendants Trott, Peace, and Jackson as elders, and adhering to what is called the Firm Foundation Faction, meeting in the church house situated on the lots acquired in 1883 by the Christian Church of McGregor, and the minority adhering to the Progressive Faction and composing the plaintiff corporation, meeting at another place, not on said lots.

"'Twelfth.   Those who compose the plaintiff corporation hold to the doctrines and fundamental principles taught and held by the Christian Church of McGregor at the time the property in controversy in this suit was acquired; and the defendants and the faction represented by them have departed from the doctrines and fundamental principles of said Christian Church of McGregor in that: (1) They deny that persons who have been immersed are scripturally baptized, or are Christians, who did not at the time of their baptism believe that baptism is for the remission of sins, and they refuse to admit such persons to membership in said church; and (2) they hold that the use of musical instruments in connection with the worship, and missionary societies and similar organization, are sinful, and they refuse to permit those members of the church who favor working through such societies to meet for that purpose in the house of worship belonging to said Christian Church of McGregor.

"Conclusions of Law.—The courts of this country have no power to determine for religious bodies ecclesiastical or doctrinal questions, and they have never evinced a disposition to invade that domain, and will only inquire into such questions when property rights become involved, and are the subject of litigation, and then only so far as to determine those rights.

"It is a rule of law that when property has become dedicated to the support of some specific form of religious doctrine, it becomes a trust and the courts will hear evidence and determine what that doctrine is, regardless of its ecclesiastical, sectarian, or denominational bearing, in order to ascertain the trust, and having so found, will enforce the trust, and not permit it to be diverted to other and different doctrinal uses.   And it is the duty of the court to decide in favor of those, whether a majority or minority of the congregation, who are adhering to the doctrines professed by the congregation and form of worship in practice at the time the trust became fixed.

"In this case the members of the Christian Church at McGregor purchased the lots in question and paid therefor, and erected the church edifice thereon, from donations by the said members and their friends,

and procured a conveyance of said lots to certain trustees named, for said Christian Church, and it thereby became immediately dedicated to the principles and doctrines maintained by said church at that time, and though a majority of its members may have changed their views on these subjects, or others become members who never entertained them, yet the indelible stamp of the original doctrine has been placed upon the property and it is held as a trust for the use of those members who still adhere thereto, however much in the minority, and those having control of the property will not be permitted to apply it to the promotion of doctrines not consistent with the fundamental doctrines of the church at the time, and for the benefit of which the trust was created.

"The property was purchased and improved, as shown by the testimony of the only two original members examined, and who are not contradicted, by those who, as a church or religious society, held to the doctrines or teachings of that branch or faction now termed the Progressive Faction. The evidence shows that the Christian Church at large, including that at McGregor, at the time this property was so acquired and improved, was based upon a broad, catholic principle, that all persons who believed that Jesus Christ is the Son of God and the Savior of Men, and who have been baptized by immersion upon a profession of faith, are Christians, and entitled to membership in their church, whether baptized into the Baptist, Methodist, or other Christian denomination, and regardless of their views as to the design of baptism, or whether they were baptized 'for the remission of sins,' or 'because of the remission of sins,' and exercising towards, and permitting the exercise by its members of the utmost liberty of thought upon other doctrinal questions and action in the advancement and dissemination of this fundamental doctrine through missionary and other auxiliary societies.

"This church believed and taught that baptism was for the remission of sins, the same as the Firm Foundation Faction now believes, but this belief was not made a sine qua non to church fellowship—the same liberality of belief being allowed upon this as other doctrinal subjects.

"The Firm Foundation Faction, as shown by the evidence, hold that without this belief, and it entertained understandingly at the time of baptism, no person can become a Christian, and be entitled to fellowship in the Christian Church, and that all missionary and other auxiliary societies to church work are deemed sinful, and any member who believes otherwise and joins such societies is deemed to be in sin and is liable to expulsion therefor.

"The church at McGregor, since passing into the hands of the Firm Foundation Faction, has never expelled any of its members who belong to such societies, but the evidence shows that such were considered by the ruling faction to have sinned by so joining, and to remain in sin so long as adhering to such societies, and were not expelled through mere indulgence of the church in the violation of its principles, and were liable to expulsion, should they remain members thereof—all such societies be-

ing held sinful in practice, violative of church doctrine, and forbidden to meet in the church building.

"In the opinion of this court the differences in the fundamental principles, doctrines, and practices between these two factions of the McGregor church are radical and irreconcilable; and the doctrines and practices of the defendants, who are in possession of the church property, are at a wide variance to, and largely subversive of, the fundamental doctrines and practices of such church at the time the property in dispute was dedicated to its support; and the trust imposed by such dedication has been and is being diverted from the purposes intended by the founders of such trust; and the plaintiff corporation is composed of those members of said church who adhere to the specific form of religious doctrine in principle and practice, to the support of which said property was dedicated, and is entitled to recover the possession thereof; and it is so ordered."

*Opinion.*—The evidence fully supports the foregoing findings of fact, which we adopt; and the trial court's conclusions of law, as recited above, upon the controlling questions in the case, are so entirely satisfactory, and so clearly and tersely stated, that we adopt them also.

There are some other minor questions presented in appellants' brief; but they are not of such importance as to require elaborate consideration here.

We do not agree with appellants upon any of the grounds assigned for a reversal of the judgment; and it will therefore be affirmed.

*Affirmed.*

Writ of error refused.