(March 30, 1912.)

THE APOSTOLIC HOLINESS UNION OF POST FALLS, a Corporation, Respondent, v. HERMAN KNUDSON, THE PENTACOSTAL CHURCH OF THE NAZARENE, et al., Appellants.

[123 Pac. 473.]

RELIGIOUS ORGANIZATION—POWER OF OFFICERS TO CONVEY PROPERTY—ACTS ULTRA VIRES—DIVISION OF CHURCH OR RELIGIOUS ORGANIZATION—TITLE TO PROPERTY ON DIVISION OF ORGANIZATION.

(Syllabus by the court.)

1. Where property had been conveyed to a religious organization and the grantee was named in the conveyance as "The Apostolic Holiness Church of Post Falls, Idaho, subject to the International Apostolic Holiness Union," a deed thereafter executed by "Reverend C. D. Erb, Pastor, C. M. Venters, Secretary," without being first authorized by the organization or society, is an act *ultra vires* and does not pass the title to such property.

2. Where the donor of real estate for church purposes conveys the property to a grantee which he designates as the "Apostolic Holiness Church of Post Falls, Idaho, subject to the International Apostolic Holiness Union," and it subsequently appears that there was no "Apostolic Holiness Church" organization at such place at the time of the execution of the deed, but that, on the contrary, there was an "Apostolic Holiness Union" at such place, "subject to the International Apostolic Holiness Union," and that such Union was commonly referred to by the members as a *church: Held,* that the members of the society or organization composing the Union took the title to the property in trust for such religious society or organization.

3. Where there is a division among the members of a church organization or religious society, those who remain with the organization and adhere to its tenets and doctrines as originally taught by the organization or congregation to which the property was conveyed or dedicated, whether they be in the majority or minority in the membership, are entitled to retain the property and to enjoy its use and benefit.

4. Where a division occurs in a church or religious organization and one faction withdraws or forms another organization, the title to the property will remain in the old organization and be subject to the control and disposition of those who adhere to the doctrines and tenets of such church or organization as originally taught.

APPEAL from the District Court of the Eighth Judicial District for Kootenai county. Hon. John M. Flynn, Judge.

Action to quiet title. Judgment for plaintiff. Defendants appeal. *Affirmed.*

McFarland & McFarland, and Elder & Elder, for Appellants.

The evidence shows that the Apostolic Holiness Church has never been organized. It is not a plaintiff in this proceeding. Plaintiff alleges title in itself in fee simple, but its proof, if it tends to show anything, shows only an equitable title.

"The rule is that plaintiff must succeed only on the strength of his own title, and not on the weakness of his adversary." (32 Cyc. 1329, 1368.)

Whitla & Nelson, for Respondent.

The property in controversy was intended for the respondent, and the lower court committed no error in decreeing title to it. (*Preachers' Aid Soc. v. England,* 106 Ill. 125; *In re Gibson's Estate,* 75 Cal. 329, 17 Pac. 438; Devlin on Deeds, par. 183.)

Where property is dedicated to a particular church, it becomes a trust for the support of the particular doctrines taught by that church at the time of the dedication of the property, and the members of the church, however small in minority, who adhere to such doctrine, are entitled to the

property as against those who departed therefrom. (*Isham v. Trustees Presb. Church*, 63 How. Pr. (N. Y.) 465; *Peace v. First Christian Church*, 20 Tex. Civ. App. 85, 48 S. W. 534; *First Presb. Church of Sand Creek v. Church of Christ*, 219 Ill. 503, 76 N. E. 703.)

AILSHIE, J.—This action was instituted by the "Apostolic Holiness Union of Post Falls, Idaho," a corporation, against Herman Knudson, C. D. Erb, C. M. Venters and the "Pentacostal Church of the Nazarene of Post Falls, Idaho," and others, for the purpose of procuring a decree quieting the title·in the plaintiff to a certain piece of land situated near Post Falls, containing something like an acre, on which had been constructed a church building. After trial a decree was entered in favor of the plaintiff and defendants appeal.

This litigation grows out of a dispute in and final division of what is designated the "Apostolic Holiness Union of Post Falls," organized about December, 1908, as an unincorporated religious society, and which was subsequently, and in April, 1911, incorporated under the laws of this state. It is a local Union or branch of what is known as the "International Holiness Union," a national organization with headquarters at Battle Creek, Michigan.

It seems that in the first place a number of the residents of Post Falls and surrounding country organized what they termed the "Apostolic Holiness Union," which was a kind of religious society composed of members of different churches, but not a church itself. They held religious services and had a minister named C. D. Erb. They had preaching services regularly for some two or three years. The subscriptions for the church building were made by the members of the Union, some thirty-odd in number. The building was erected on land belonging to Herman Knudson. The minister, Reverend Erb, called on Knudson and requested him to donate a piece of ground for this purpose, to which Knudson gave his consent. Apparently Knudson did not know the exact or correct name of the church or organization and evidently did not care. He was not a member himself. He was willing, how-

ever, to give the ground for church or religious purposes. On October 25, 1910, he executed a deed of conveyance for the property to the "Apostolic Holiness Church of Post Falls, Idaho, subject to the International Apostolic Holiness Union." In the meanwhile differences arose among the members of the organization, and the minister Erb, together with seven other members of the Union, withdrew from the Union and formed a church organization which they designated as the "Pentacostal Church of the Nazarene of Post Falls, Idaho," and subsequently caused the same to be incorporated under the laws of the state of Idaho. Reverend Erb thereafter called on Knudson and advised him that he had organized a church and requested him to deed the property to the "Pentacostal Church of the Nazarene." Knudson advised him that he was willing to do so, but that he should first have the property deeded back from the "Apostolic Holiness Church" or Union, to which he had formerly executed the deed of conveyance. Thereupon the Reverend Erb as "pastor" and C. M. Venters as "secretary" of the "Apostolic Holiness Church" or Union, of Post Falls, executed a deed of conveyance in the name of the "Apostolic Holiness Church of Post Falls" to Knudson, and Knudson thereupon executed his deed of conveyance of the same property to the "Pentacostal Church of the Nazarene of Post Falls." The present action was thereupon instituted by the "Apostolic Holiness Union of Post Falls" to have the title quieted to the property and to procure a cancellation of the deed executed by Erb and Venters to Knudson and the deed from Knudson to the "Pentacostal Church of the Nazarene."

The trial court made findings in favor of the plaintiff on all of the issues raised and entered its decree quieting the plaintiff's title to the property.

It appears that all the parties to this action except Knudson were originally members of the "Apostolic Holiness Union of Post Falls" until about February, 1911, when the appellants herein withdrew from the Union and organized the "Pentacostal Church of the Nazarene." They left a mem-

bership in the Union of about twenty-four. It conclusively appears that the members who withdrew from the Union and formed the "Pentacostal Church of the Nazarene" departed from the doctrines and discipline of the original organization and adopted a new or different religious doctrine and became members of a wholly different organization. The members withdrawing were the minority and the majority remained with the original organization. It is also admitted by both Erb and Venters that no vote was taken and no authority was ever given empowering or directing them (Erb as pastor and Venters as secretary) to execute the deed from the Apostolic Holiness Church to Knudson. It is therefore clear that this deed was executed without authority and that it transferred no title from the Union, or the original grantee, whom they pretended to represent, to Knudson. It is also equally clear that Knudson acquired no title which he could reconvey to the "Pentacostal Church of the Nazarene." This is the crux of the whole controversy and is decisive of this case.

Considerable discussion has been had and a great portion of the briefs has been devoted to the diversity of names and the fact that there was no such thing as an "Apostolic Holiness *Church* of Post Falls" at the time Knudson executed his first deed, but that there was an "Apostolic Holiness Union" there, and these two names represent two separate and distinct societies. As the matter appears to us, this is of but little consequence. It made no difference to Knudson, so far as the record discloses, whether the grantee in his conveyance was the "Apostolic Holiness *Union*" or the "Apostolic Holiness *Church*." His only purpose was to convey the property for church and religious purposes. He incorporated in his first deed of conveyance the specific proviso that "the property should be used for church purposes only," and that was evidently his intention and he cared nothing about the name of the organization. He was not a member himself of any of these organizations. He was not even able to tell on the witness-stand the name of the

organization to which he had transferred the property or
the name of the organization to which Erb originally solicited
him to convey the property. It is clear, however, that the
title to the property passed from Knudson to the religious
organization then in existence known as the "Apostolic Holi-
ness Union," which was "subject to the International Apos-
tolic Holiness Union." It is equally clear that the members
of the Union took the title in trust for such church and
religious purposes as the Union represented.

Appellants contend, on the other hand, that they never
organized the "Apostolic Holiness Church," but that, on the
contrary, they organized the "Pentacostal Church of the
Nazarene," and that this latter organization constituted the
*church* organization. The force of this contention is de-
stroyed by the fact that these appellants withdrew from the
organization to which the property had originally been con-
veyed, and departed from its discipline, doctrines and tenets.
The rule of law with reference to religious societies is well
settled that where there is a division among the members of
a church organization or religious society, those who remain
with the original organization and adhere to the tenets and
doctrines as originally taught by the organization or congre-
gation to which the property was conveyed or dedicated,
whether they be in the majority or minority in membership,
are entitled to the use and control of the property. Where
a division occurs in a church or religious organization and
one faction withdraws or forms another organization, the
title to the property will remain in the old organization and
be subject to the control and disposition of those who adhere
to the doctrines and tenets of such church or organization as
originally taught. (*Christian Church of Sand Creek v.
Church of Christ of Sand Creek*, 219 Ill. 503, 76 N. E. 703;
*Peace v. First Christian Church*, 20 Tex. Civ. App. 85, 48 S.
W. 534; *Schnorr's Appeal*, 67 Pa. 138, 5 Am. Rep. 415; *Isham
v. Trustees of First Presbyterian Church*, 63 How. Pr. (N.
Y.) 465; *Alden v. Rector of St. Peter's Parish*, 158 Ill. 631,
42 N. E. 392, 30 L. R. A. 232.)

The judgment should be affirmed, and it is so ordered. Costs awarded to respondent.

Stewart, C. J., and Sullivan, J., concur.