(No. 13937.—Reversed in part and remanded.)

Gus HEILIGENSTEIN *et al.* Plaintiffs in Error, *vs.* ADELINE SCHLOTTERBECK *et al.* Defendants in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 8, 1921.*

1. DEEDS—*what mental capacity is required to make a voluntary settlement.* The test of mental capacity necessary to make a valid deed of voluntary settlement is that the grantor be capable of understanding in a reasonable manner the nature and effect of the act in which he is engaged.

2. SAME—*when deed is not testamentary.* If the intended disposition of property in a deed is not to take effect in the lifetime of the grantor but is ambulatory until his death the deed is void as a testamentary disposition not in conformity with the Statute of Wills, but a deed which has been delivered becomes at once binding and effective and is valid even though it conveys a future estate.

3. SAME—*deed of voluntary settlement is presumed to have been delivered.* A deed of voluntary settlement without consideration is presumed to have been delivered and the burden is on complainants who seek to set the deed aside to show clearly that there was no delivery, and where there is evidence of delivery an acceptance of the deed is presumed.

4. SAME—*when deed to religious corporation is void.* A deed conveying to a religious corporation more than twenty acres of land for other than church purposes violates section 42 of the Corporations act and is void.

5. SAME—*when deed conveying land to unincorporated religious society is void for want of grantee.* A deed which conveys land directly to an unincorporated religious society by name is void for the want of a grantee capable of taking by deed.

WRIT OF ERROR to the Circuit Court of Effingham county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

W. S. HOLMES, JACOB ZIMMERMAN, and GEORGE H. BAUER, for plaintiffs in error.

G. F. TAYLOR, WALTER C. KLITZING, and H. S. PARKER, for defendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

August 25, 1919, Josephine Wittmeier died intestate, leaving two brothers, Gus Heiligenstein and Jo Heiligenstein, and three sisters, Mary Hahn, Adeline Schlotterbeck and Lena Holmes, as her only heirs. August 21, 1919, she executed a deed to her sister Adeline Schlotterbeck for the consideration of one dollar and love and affection, conveying two and one-half lots in Altamont together with personal property on said premises, reserving a life estate in the realty and providing that the personalty should be the absolute property of the grantee from the date of the delivery of the deed. On the same day she executed a deed to her niece, Maggie Heiligenstein Schott, for a consideration of one dollar and love and affection, conveying two lots in Altamont, reserving a life estate. The next day she executed a deed for the consideration of one dollar and the stipulations contained in a trust agreement of even date, conveying to William H. Engbring 120 acres of farm lands. The agreement provided that Engbring sell the farm as soon as practicable after her death for the largest sum obtainable but not for less than $75 an acre; that he pay from the proceeds certain specified sums to certain named individuals and Catholic charitable institutions; that he pay for any legal services he might need in carrying out the terms of the trust and for the purpose of defending the validity of the deeds executed by her; that he retain as fees a reasonable sum, not less than five per cent of all money received by him, and that he pay the remainder of the money derived from the sale of the 120-acre farm to the Catholic Orphan Asylum at Alton, Illinois. On the same day she executed another deed to Engbring for the consideration of one dollar, conveying to him two lots in Altamont, which deed contained a provision that it was made to carry out the provisions of an agreement made between the grantor and Frank Schlotter-

beck, dated March 12, 1917, for the sale of said lots for $3000, payable in installments, the last installment being due April 1, 1926, a deed to be made to the purchaser when the purchase price was fully paid. From the money received from this sale Engbring was to pay $1000 toward the erection of a new Catholic church at Altamont, to pay for some memorial windows and other things in said church, and to pay for one hundred masses to be read for the repose of the souls of grantor and her divorced husband, Charles Wittmeier. On the same day she executed a deed for the consideration of one dollar to St. Clare's Roman Catholic Church of Altamont, conveying a 60-acre farm and part of two lots in Altamont. This deed provided, among other things, that it was made on condition that the east 20 acres should be used by said church forever as a memorial park, to be known and called Wittmeier Park, the premises to be planted with trees and the ground laid out in flower beds and shrubs, so as to be fit for a park and pleasure ground for social gatherings for the congregation and their friends. The church was given authority to sell the west 40 acres of said tract for not less than $150 an acre, and was required to pay to Charles Wittmeier the sum of $50 a month, beginning one month after grantor's death, for and during his life, pay his doctor and hospital bills, provide him a Christian burial, pay his funeral expenses, and inter his body on the lot owned by the grantor in the cemetery at Altamont.

The two brothers, Gus and Jo Heiligenstein, and one sister, Mary Hahn, filed a bill for partition and to cancel the deeds, alleging want of mental capacity in the grantor and undue influence; that the deeds were testamentary, were never delivered and never accepted; that St. Clare's church, in Altamont, is a religious corporation, and that the statute under which it is organized prohibits it from acquiring property in excess of 20 acres and for other than church purposes. Answers were filed denying all the charges in the bill. The evidence was heard in open court before the chan-

cellor, who entered a decree dismissing the bill for want of equity. Complainants have sued out this writ of error, and claim that the court erred in dismissing their bill and that the deeds should have been set aside for the reasons urged in the bill, and that the court erred in the admission and exclusion of evidence.

About fifty witnesses were examined, consisting of relatives, friends, neighbors, acquaintances, business men, tenants and physicians. To give the substance of the evidence would serve no useful purpose and would extend this opinion to an unwarranted length. It is sufficient for our purposes to briefly sum up the evidence as follows: Deceased was sixty-one years old at the time of her death. She owned the property described in the deeds above mentioned and it was worth approximately $25,000. She was married in 1880 to Charles Wittmeier. They lived together until 1895, when they separated on account of his drunkenness, and at that time he conveyed to her practically all his property. The property she owned at her death was the property he had conveyed to her, with the exception of two of the city properties, which she purchased from her mother's estate for $2700 with the proceeds received by her from the sale of 40 acres additional lands which her husband had conveyed to her. In 1916 she procured a divorce from her husband in order that she might sell some of the property. She was a member of the Catholic church and very devout in her belief. She never had any children. An adopted daughter, Leonella, died in 1906 at the age of twenty-one years. She had been very fond of this child, and many of the witnesses stated that the death of the child had a profound influence over her and that they noticed a change in her mental attitude after that time. She was a woman of high temper and frequently engaged in quarrels and disputes as a result of misunderstanding with her neighbors and friends. She was naturally of a suspicious nature and had trouble with her tenants over trivial matters and was very exacting in refer-

300—14

ence to her demands, which were often unreasonable. She became angry at her sister Adeline Schlotterbeck and refused to speak to her for seven or eight years. In 1907 her mother died, and she presented a claim for $29 against the estate and two days later swore to a claim for $529. On a trial of the claim she was defeated, and this made her angry at her brothers and sisters who opposed her and she did not speak to them for several years. One time she left her purse at the baker's, and forgetting about it she accused a neighbor lady of stealing it, but afterwards found it and apologized for her accusation, saying that she was forgetful. On one occasion she had trouble with her washerwoman over her pay, claiming that she had paid her, and afterwards found on the clock-shelf the money she had intended for her and acknowledged her mistake in reference to it. She gave her brother Gus a receipt for rent and signed her name Mrs. J. M. Heiligenstein. She received an unsigned letter through the mail warning her to make peace with her God, the Catholic church and her divorced husband, because her relatives were waiting to get what she had. This letter worried her and she made inquiry from several sources trying to find who wrote it, and claimed that she found the authors, Mrs. Schoening and Mrs. Cable, but they testified denying the authorship. She suffered from cancer of the stomach, from which she finally died. She went to the hospital at Effingham the latter part of July and died at the hospital August 25, 1919. She weighed about 185 pounds when in health but lost weight until she weighed less than 100 pounds. Her sickness made her very weak, both physically and mentally, and at times she did not recognize acquaintances and called them by the wrong names. She made statements to different witnesses relative to the disposition she intended to make of her property which are in accord with the disposition she made of it in the deeds in question. The evidence relative to her condition during the last week she was in the hospital is very conflicting.

The witnesses are about equally divided as to number and credibility, but considering the interest of the witnesses we agree with the chancellor that the weight of the evidence shows that deceased was competent mentally to execute the deeds and understand the disposition of the property she made. The test of mental capacity necessary to make a valid deed is that the grantor is capable of understanding in a reasonable manner the nature and effect of the act in which he is engaged. *(Fitzgerald* v. *Allen,* 240 Ill. 80.) There is practically an entire failure of evidence on the issue of undue influence. On the contrary, complainants' evidence shows that she was a strong-willed woman, hard to influence, and they showed nothing that would make a case of undue influence. The chancellor heard the witnesses testify and was in a much better position to judge their credibility than we are. Under such conditions the court will not disturb the findings of the chancellor unless it is apparent that a clear and palpable error has been committed. *Valbert* v. *Valbert,* 282 Ill. 415.

It is claimed that the deed to Engbring and the trust agreement, when construed together, show that the instruments are testamentary in character. When an instrument is testamentary it is ambulatory, like a will. A will is ambulatory for the reason that it does not take effect until the death of the testator and may be changed by the testator any time before death. If a deed lacks delivery,—*i. e.,* if the intended disposition is not to take effect in the lifetime of the grantor but is ambulatory, changeable until the death of the grantor,—such disposition is not operative unless executed in writing in conformity with the Statute of Wills. *(Oswald* v. *Caldwell,* 225 Ill. 224.) With deeds that have been delivered it is different. A deed signed, sealed and delivered becomes at once binding and effective and from thenceforth it is irrevocable and unchangeable. If not delivered it is not effective and is not a deed. The delivery is as necessary to make it a deed as the signing and sealing.

In order that a writing in form a deed may be held to be testamentary it must lack delivery. If the instrument in form a deed is delivered it at once becomes binding and effective and cannot thereafter be revoked or changed. Such an instrument is not testamentary in character. *(Massey* v. *Huntington,* 118 Ill. 80; *Buck* v. *Garber,* 261 id. 378; *Young* v. *Payne,* 283 id. 649; *Moore* v. *Downing,* 289 id. 612; *Patterson* v. *McClenathan,* 296 id. 475.) A deed that has been delivered is valid even though the estate is a future estate. *Nowakowski* v. *Sobeziak,* 270 Ill. 622; *White* v. *Willard,* 232 id. 464.

It is further contended that the deeds in question were not delivered. These deeds were voluntary settlements without consideration, and the presumption of law in such case is in favor of the delivery and the burden of proof is on complainants to show clearly that there was no delivery. *(Valter* v. *Blavka,* 195 Ill. 610; *Thompson* v. *Calhoun,* 216 id. 161.) The evidence shows that the deeds executed August 21 were delivered to Adeline Schlotterbeck, and the deeds executed August 22, naming Engbring grantee, were delivered to Engbring. This constituted a good delivery. An acceptance of the deeds would be presumed. *Hill* v. *Kreiger,* 250 Ill. 408; *Moore* v. *Downing, supra.*

Complainants contend that the deed made to St. Clare's Roman Catholic Church of Altamont is void because it is an attempt to convey to a religious corporation land exceeding in quantity 20 acres, in violation of section 42 of the act concerning corporations. Defendants claim that the church is not a corporation but that it is a mere voluntary religious organization and that the restrictions of the statute have no application. We do not find it necessary to determine whether St. Clare's Roman Catholic Church of Altamont is a corporation, because this deed is void regardless of our conclusion on that point. If the church is a corporation the deed is void because the conveyance is in violation of the statute. *(St. Peter's Roman Catholic Congre-*

*gation* v. *Germain,* 104 Ill. 440.)   If the church is a mere
voluntary association of individuals for religious purposes
it is not a person, natural or artificial, nor is it any other
entity that may be the owner of property.  *(People* v. *Bran-
der,* 244 Ill. 26.)   In *Alden* v. *St. Peter's Parish,* 158 Ill.
631, the grantors conveyed to "the rector, church wardens
and vestrymen of St. Peter's parish, in the city of Sycamore
and the diocese of Illinois," certain real estate, and it was
held that the officers of the church took the property in trust
for a designated charitable and pious use and that the deed
was not void for want of a grantee capable of taking by
deed.   In the instant case the conveyance is not to the offi-
cers of the church but it is to a religious society claimed by
defendants to be unincorporated, and if this claim is sus-
tained it is to a grantee incapable, in law, of taking by deed.
*(Silverman* v. *Kristufek,* 162 Ill. 222 : 5 R. C. L. 313; 5 Cor-
pus Juris, 1343.)   It follows that the chancellor erred in
confirming title in St. Clare's Roman Catholic Church of
Altamont.

Charles Wittmeier contends that the fact that the deed
is void for want of a grantee does not defeat his rights
under the instrument, and that the lands descended to the
grantor's heirs impressed with the trust declared in the in-
strument in his favor.   He has not filed a cross-bill and no
affirmative relief can be granted him in the present state of
the record.   On remandment he may amend his answer and
file a cross-bill asking for such relief, if so advised.   What
we have said is not to be considered as in any way passing
upon the soundness of his claims.

Other errors are assigned and argued, but in view of the
conclusions we have reached we do not consider them of
sufficient importance to discuss them at length.   It is suf-
ficient to say, if the claims were sustained they would not
change the result.

The decree with respect to the deed to St. Clare's Roman
Catholic Church of Altamont is reversed and the cause is

remanded to the circuit court of Effingham county for further proceedings in accordance with the views herein expressed. In all other respects the decree is affirmed.

*Reversed in part and remanded.*