[No. 21888.    Department One.    August 6, 1929.]
THE SAINTS OF SPOKANE, *Appellant*, v. GEORGE W. BAILEY *et al.*, *Respondents.*[1]

*C. T. McDonald* and *G. E. Lovell,* for appellant.

*Tustin & Chandler* and *Voorhees & Canfield,* for respondents.

TOLMAN, J.—Five individuals, claiming to be the trustees of a corporation organized for religious purposes under the name of The Saints of Spokane, instituted this action in the corporate name, seeking the cancellation of a deed purporting to be executed by the corporation conveying certain real estate to the defendant George W. Bailey.

The defendants Bailey appeared and defended their title to the real estate, and an entirely different board of trustees also appeared and sought an abatement of the action because of the alleged lack of authority in those who caused the action to be instituted to represent the corporation in any way or to maintain any action in its name.

A trial was had on the merits, resulting in a decree sustaining this defense. The appeal is from that decree.

[1]Reported in 279 Pac. 750.

The Church of God, as it is called, appears to be a peculiar organization, with its own peculiar beliefs and customs. It has no creed or discipline except the Bible, and no church organization or governing body of any kind. It does not, in form, admit or enroll members, and each congregation owns its own property, employs its own minister and conducts its own affairs, wholly independent of all others.

In 1905 there was but one organization of this kind in the city of Spokane, and, having acquired, or intending to acquire, real property for church purposes, the corporation here named was organized under our then statutes governing the incorporation for religious purposes, and the title to the property now in controversy was thereafter vested in the corporation. By-laws were adopted which, as to the rights and duties of the trustees, provided:

"Trustees or their successors may be appointed at any general coming together of The Church according to previous announcements, declaring the intention of the church respecting such appointment. All members present being of one accord shall manifest their approval of the person named for Trustee by the sign signified by the chairman. No one objecting the trustee named shal... be declared duly appointed. The power to dismiss and to appoint being vested in the church when assembled with the Elders and other officers.

"Term of Officers

"Trustees shal... hold their office until their successors shal... be appointed.

"No of Trustees

"The board of Trustees as a corporated body shal... consist of five members.

"Duty and Power of Board of Trustees.

"Trustees shal... meet at such times and place most convenient for them to confer and arrainge for the performence of all duties hereinafter confered upon them by the church they shal... have power to elect

officers of the board, create officers, and authorize committes *ect*, and be responsi*bly* for all b*ui*sness committed to their. trust. They shal... have charge of donations, and subscriptions, bequests, with all other moneys and finances which by any persons or person shal... be placed in their Trust, For the purchase of a lot or lots in city of Spokane Wash. For Church pur-poses or for material or labor to build a 'home' for gospel workers house or houses for religious worship,. Any or all other*s* buildings used to promote interests of the Church of God at Spokane, each and every member being a benefactor of the same They shal... hold deeds and abstracts of realestates, execute wills, hold and controle such property personal, as from time to time becomes the property of the church.

"They shal... make and sign contracts through their officers chosen for that purpose, and transact all b*ui*siness pertaining to the office of trustees.

"They shal... keep a rec*k*ord of all b*ui*sness transacted, and report the same to the Church at will, or by request of a majority of the members of the congregation, at any general gathering.

"They shal... mortgage not any church property nor borrow money on interest unless so instructed by the Church (when assembled) a record being kept of the same."

It will be observed that no provision is made in the by-laws as to the notice required for meetings to elect or discharge trustees, but it seems clear from the evidence that, before trouble arose, a custom had grown up, acquiesced in by all, to give a notice from the pulpit in the usual place of worship ten days in advance, and in accordance with such notice only, meetings for the election of trustees and like business had been invariably held.

In 1906 the defendant George W. Bailey became the pastor of the congregation which had caused the organization of the corporation, and subsequently a church building was erected on the real property acquired by the corporation, which became known as

the Ash Street Church. There was also erected on the same parcel of land another building used for parsonage and for lodging purposes for those interested in the church's activities, and the defendants Bailey furnished this building, took possession thereof, entertained boarders and lodgers and retained the proceeds for their own use.

In 1921 there arose a dissension between the defendant Bailey and the ministerial assembly, of which he was a member, which assembly had nothing to do with the affairs of the individual churches, resulting in action by the ministerial assembly by which they undertook to "renounce" Mr. Bailey and withdraw their fellowship from him, not on account of any doctrinal views which he entertained, but, apparently, by reason of some differences of opinion over the question of divorce and remarriage. The ministerial assembly reiterated its action in January, 1922, and following that, on March 22, 1922, four of the five trustees of the corporation met at a private home without notice to Mr. Bailey, who was the fifth trustee, and by resolution attempted to discharge him from his position as pastor of the church and to direct him to vacate the parsonage.

It seems to be now conceded that the trustees, as such, had no authority whatever in the matter of the employment or discharge of the minister, and that their action in this respect was wholly without effect. At about the same time, a petition was signed by many members of the congregation asking Mr. Bailey to remain as pastor of the church, and he did so remain.

The demand of the four trustees having been ignored, they did not thereafter attend services at the Ash Street Church, but they and their followers began to hold meetings in other places, and later acquired a church building of their own. Upon the secession or

withdrawal of these four trustees and their followers, a meeting was duly called by proclamation from the pulpit on a day of regular service and thereafter held on June 8, 1922, for the purpose of electing four trustees to succeed the four who had seceded.

It appears that the seceders heard of the meeting and attended, and probably the Ash Street Church had a record attendance at that meeting. Just what occurred is very much in dispute. Appellants assert that an announcement was made that only those who had petitioned for the retention of Mr. Bailey as pastor would be permitted to vote, or those who favored his retention; while upon the other hand, it is positively asserted by a number of witnesses that no announcement was made limiting the right to vote. However that may be, the seceders, if we may use that term, with perhaps some protest, refrained from voting, and action was taken by the meeting recognizing the withdrawal of the four trustees and electing their successors.

We do not now find it necessary to inquire further as to whether the action at this meeting was regular, or not, because it is conceded that thereafter those who had withdrawn did not again attend the Ash Street Church or become a part of the congregation worshiping there, and took no further part in its affairs, and that, after due notice given in accordance with custom, in January, 1923, and in January of each year thereafter, trustees were duly and regularly elected by the congregation worshiping in the Ash Street Church, and their successors are now defending this action and questioning the right of the trustees who seceded in 1922 to further represent the corporation.

The trial court held that the withdrawing members in 1922 had seceded from the church, thereby forfeiting their interest in the church property, had ceased

to be members of, or interested in, the corporation, and that the present defending trustees, regularly elected at a subsequent regular annual meeting, were the duly elected and acting trustees of the corporation.

These findings, so far as they involve questions of fact, are well supported by the evidence, and, so far as they involve questions of law, are well supported by the authorities.

"The separation or secession of part of the members from a church does not destroy the identity of the church or lessen the rights of those adhering to the organization, but members seceding from a church thereby forfeit all rights to the church property, and the courts, when called upon, will award the property, and all rights pertaining thereto, to those who continue to adhere to the doctrine, tenets, and rules of the church as they existed before the division, . . ." 34 Cyc. 1167.

*Lost River Norwegian Evangelical Lutheran Congregation v. Thoen,* 149 Minn. 379, 183 N. W. 954; *Apostolic Holiness Union of Post Falls v. Knudson,* 21 Idaho 589, 123 Pac. 473; *Slinker v. Sumner County Building & Loan Ass'n,* 96 Kan. 672, 153 Pac. 537; *Christian Church of Vacaville v. Crystal,* 78 Cal. App. 1, 247 Pac. 605.

In the last cited case, the seceders were in the minority, and that fact is made apparent in the opinion of the court, but where, as here, there was no doctrinal difference, it does not seem necessary to inquire which faction was in the majority. Having chosen to separate from the Ash Street Church and go elsewhere to form a new congregation for the propagation of the same doctrines, even though they were a majority of the old congregation, which is open to serious question, those who left thereby abandoned their rights in the property, and having stood by and permitted the congregation which remained to enjoy and deal with the

property for years, without protest, and finally to convey a part of it in payment of what appears to be an honest debt, they may not now assert even those rights, if any, which might have been asserted at the time of the withdrawal.

The judgment appealed from is right, and is therefore affirmed.

HOLCOMB, FULLERTON, MAIN, and BEALS, JJ., concur.