THE CHRISTIAN CHURCH OF SAND CREEK *et al.*

*v.*

THE CHURCH OF CHRIST OF SAND CREEK *et al.*

*Opinion filed February 21, 1906.*

1. CHURCHES—*courts cannot pass upon church differences except in so far as property rights are involved.* Secular courts are powerless to pass upon questions of difference between contending factions of a church congregation except in so far as property rights are involved.

2. SAME—*on division of congregation the property belongs to that portion observing original doctrines.* Where members of a religious congregation divide and a new organization is formed by the withdrawing faction, the title to property of the congregation remains in that part of the congregation which adheres to the tenets and doctrines originally taught by the congregation to whose use the property was originally dedicated.

3. SAME—*when name in which deed was taken has little weight.* In determining to which faction of a congregation incorporated, respectively, after division as the "Christian Church" and the "Church of Christ" the property of the congregation belongs, the fact that the deed was to the trustees of the "Christian Church" has but little weight, where the congregation was not at that time incorporated, and was known then and afterwards, until the time the congregation divided, by both names, the name "Christian Church" being over the door and the business being conducted in the name "Church of Christ."

4. SAME—*deed to trustees of congregation not void because congregation was not incorporated.* A deed to the trustees of a named church is in the nature of a charitable trust, and is not void for want of a grantee because the congregation was not incorporated, but in such case all members of the congregation become beneficiaries in the property conveyed.

5. SAME—*seceding faction which teaches innovations abandons interest in property of original congregation.* Members of a seceding faction of a congregation, who form a new organization and teach and practice innovations not recognized or taught by the original congregation, abandon their interest in the property belonging to the original congregation at the time of the division.

6. SAME—*effect where majority of other congregations have adopted innovations taught by seceding members.* Where all con-

gregations of a particular denomination are self-governing and independent of the others, the fact that most congregations have adopted the innovations practiced and taught by the seceding faction of a particular congregation has no effect to strengthen the rights of the seceding members, where the particular congregation has not adopted such innovations but adheres to its original tenets and doctrines.

7. SAME—*when title to property vests in non-seceding faction.* Where, after division of a congregation, the members remaining loyal to the original tenets and doctrines of the congregation incorporate as the "Church of Christ," the title to property previously conveyed for the benefit of the congregation to the trustees of the "Christian Church," which had not then been incorporated, vests immediately in the corporation so organized, and is not divested by the subsequent incorporation of the seceding faction under the name "Christian Church."

WRIT OF ERROR to the Circuit Court of Shelby county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

CHAFEE & CHEW, for plaintiffs in error:

The members of a faction of a church do not withdraw from the church by keeping up a separate organization, holding separate service at separate times under another pastor, or by discharging the original pastor. 24 Am. & Eng. Ency. of Law, (2d ed.) 354; *West Koshkonong Congregation v. Ottsen,* 80 Wis. 62; *Holm v. Holm,* 81 id. 374.

The majority of a church which has abandoned a religious faith on which the church was founded cannot hold the church property against a minority which adheres to the original doctrine. *Smith v. Pedigo,* 32 L. R. A. 838; *Schnorr's Appeal,* 5 Am. Rep. 415.

The minority of a church acting in harmony with its laws and adhering to the faith constitute the church, as against a majority which has departed from the faith. *Smith v. Pedigo,* 32 L. R. A. 838.

The majority of the members of a church independent in government has no power to divert church property to the

propagation of doctrines contrary to those held by their denomination.  *Mt. Zion Church* v. *Whitmore,* 83 Iowa, 138.

In case of a division in the congregation, the title to the property is in that portion of the congregation which adheres to the denomination of which the congregation was a part and conforms to its rules, doctrines and beliefs.  *Roshi's Appeal,* 69 Pa. 466.

It is the well settled law of the civil courts that title to church property, in case of schism in a congregation, is in that part of the congregation which is acting in harmony with its own law and the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute began.   In such cases it is the duty of the court to decide in favor of that faction, whether a majority or minority, which adheres to the doctrine maintained by the religious sect of which that congregation was a part.   24 Am. & Eng. Ency. of Law, (2d ed.) 354; *Ferraria* v. *Vasconcelles,* 23 Ill. 456; *Smith* v. *Pedigo,* 145 Ind. 361.

The excommunication by a majority faction of a church of the minority members who still adhere to the original faith and claim to be the church cannot affect the rights of the minority to the church property.   *Smith* v. *Pedigo,* 32 L. R. A. 838.

WILLIAM C. KELLEY, WALTER C. HEADEN, and E. A. RICHARDSON, for defendants in error:

All questions of doctrine, practice and jurisdiction within a church must be determined by the church judicatures. The secular courts of this State have no authority to adjudicate upon them.  *Kuns* v. *Robertson,* 154 Ill. 394;  *Chase* v. *Cheney,* 58 id. 509.

Matters of discipline, only, are not regarded as affecting church trusts; matters of doctrine are.   This distinction is recognized in all cases.  *Trustees* v. *Trustees,* 3 Green's Ch. 79; *Fell* v. *Read,* 3 Ves. 69; *Beatty* v. *Kurtz,* 2 Pet. 579; *McGinnis* v. *Watson,* 41 Pa. St. 9.

Where there is a general law authorizing the formation of a corporation and an attempt in good faith to comply with the law, and also a user of the franchise, it has been universally held that there is a corporation *de facto. Bushnell* v. *Ice Machine Co.* 138 Ill. 67; *Hudson* v. *Green Hill Seminary,* 113 id. 618.

The only effect of the deed executed by Turrentine and wife to the trustees of the Christian Church at Sand Creek, which had no corporate existence, would be that all the members of the body or congregation would become beneficiaries of the property in equal degrees. *Ferraria* v. *Vasconcellos,* 31 Ill. 25; *Alden* v. *St. Peter's Parish,* 158 id. 631.

Where a majority of an unincorporated religious society are organized as a corporation under the general law of the State, the rights and interests of the individual members in the property held by the original society are thereby transferred to the corporation. The minority, by incorporating, lose their individual rights and interest in the property which does not pass to any corporation organized by them. *Dubs* v. *Egli,* 167 Ill. 520; *Happy* v. *Morton,* 33 id. 398.

A court of equity will not interfere with property held by a religious association, at the instance of a minority of the members, on the ground that the majority has seceded from the regular church organization and such secession amounts to a perversion of the trust, unless there is a real, substantial departure from the purposes of the trust. *Kuns* v. *Robertson,* 154 Ill. 394; *Happy* v. *Morton,* 33 id. 398; *Lawson* v. *Kolbenson,* 61 id. 405.

To justify interference by a court of equity with the action of the church authorities because of deviations from the standards of faith, such deviations should be so palpable and unequivocal as to enable the court, from an examination of the historical and doctrinal practices of the church, to say that there has been an essential change in the fundamental doctrines. *Happy* v. *Morton,* 33 Ill. 398; *Kuns* v. *Robertson,* 154 id. 394.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by plaintiffs in error in the circuit court of Shelby county, against the defendants in error, to obtain a construction of a certain deed bearing date July 18, 1874, from James A. Turrentine and wife to the trustees of the Christian Church of Sand Creek, Shelby county, Illinois, and for a decree adjudging the premises described in said deed, and the brick church located thereon, to be the property of the plaintiffs in error. An answer and replication were filed, the cause was tried in open court and a decree was entered dismissing the bill for want of equity, and a writ of error has been sued out from this court to reverse said decree.

It appears from the pleadings and proofs that in the year 1834 a church was organized at Sand Creek, Shelby county, Illinois, by followers of the Rev. Alexander Campbell; that the congregation first erected a log church, in 1851 a frame church and in 1874 a brick church, in which the congregation worshiped until in the year 1904, when the Sand Creek congregation divided, about thirty members thereof designating their organization as the "Christian Church of Sand Creek," and the remainder of the congregation, about one hundred in number, designating their church organization as the "Church of Christ of Sand Creek," and that since the division of the congregation the defendants in error have worshiped in said brick church and the plaintiffs in error have worshiped in a school house near by. From the time of the organization of said congregation, in 1834, up to its division, in 1904, it was called the "Christian Church of Sand Creek" or the "Church of Christ of Sand Creek," the names "Christian Church" or "Church of Christ" being used by the members of the Sand Creek congregation to designate the congregation that worshiped in said log, frame or brick church from 1834 to 1904. The members of said congregation were also at times designated as the "Disciples of Christ." The names "Christian Church" and "Church of Christ" seem

to have been used synonymously by the members of the Sand Creek congregation, some preferring one name and some the other.   After the brick church was erected, in 1874, for a time the words "Christian Church, Erected in 1874," were conspicuously placed above the front door of the church. Those words were removed from above the door, however, several years prior to 1904 and at a time when the church building was undergoing repairs.

The several church organizations formed by the followers of Alexander Campbell,—and they are numerous,—at the time of their organization were, and now are, purely congregational in their government; that is, there is no general conference, synod, presbytery or other similar body which exercises supervision over said church congregations, but each organization, in matters of practice, in church government and otherwise, is sovereign, and the congregations so organized have no creed except the Bible, the view of the followers of said Alexander Campbell being, that where the Bible speaks the congregation and its several members are authorized to speak, but where it is silent the congregation and the members thereof should also remain silent.   In 1849 there sprang up among the members of said religious sect different views upon subjects of practice to be adopted by the congregations with reference to matters upon which the Bible is silent, one view being, that in the matters upon which the Bible is silent such silence should be construed as a positive prohibition; the other view being, that if the Bible is silent upon a given subject pertaining to church government then the congregation may formulate a rule in that particular for the government of the congregation.   The division along the lines above suggested seems to have grown as the church membership increased, and in 1889 there was a wide difference of view between the several congregations, and between the members of the same congregation, relative to many practices in the church, such as to the propriety of having instrumental music in the church during church services; the

employment by the congregation of ministers of the gospel for a fixed time and for a fixed salary; the organization of missionary societies and Sunday schools as separate organizations outside the regular church congregations; the raising of funds for the support of the gospel by holding church fairs and festivals, and perhaps in other matters of a similar character; and in that year, at the annual August meeting held at the Sand Creek church, and where there was present a large concourse of people drawn together from different congregations, Rev. Daniel Sommers, a follower of Alexander Campbell, preached a sermon upon what was characterized as innovations upon the practices of the church, and afterwards a declaration, known as the "Sand Creek Declaration," was presented to the brethren present for their endorsement. That declaration condemned many, if not all, of the practices above referred to. It was signed by a few, only, of those who were present, and it was not considered binding upon any member of the church or upon any congregation unless signed by the member or adopted by the church congregation, but was considered merely advisory to the members of the church. The division heretofore referred to, from that time forward seems to have spread, and at the time this suit was commenced the evidence shows the followers of Alexander Campbell had divided upon those lines to such an extent that one faction in the church was characterized as progressives and the other conservatives, the members favoring the more liberal view being called "Progressives," while those entertaining the more conservative view were called "Antis." The persons entertaining the progressive view appear latterly to have usually favored and taken in their church organizations the name "Christian Church," while those favoring the conservative view have taken the name "Church of Christ" as the name of their church organizations.

While there was some discussion between the members of the Sand Creek congregation prior to the year 1904 in regard

to the "Sand Creek Declaration," and as to the propriety of having instrumental music in church during church services, the employment of a minister of the gospel for a fixed time for a fixed salary, the organization of missionary societies and Sunday schools outside the church congregation, and the holding of church fairs and festivals for the purpose of raising money for the support of the church congregation, none of those matters were ever brought before the Sand Creek congregation for discussion and determination, and that congregation, as such, never took action with reference thereto, and none of the matters in church practice which are characterized as innovations were ever endorsed or practiced by the Sand Creek congregation, but that congregation, as a congregation, up to the time of its division, in 1904, remained conservative. Prior to 1904 the plaintiffs in error and the defendants in error met as one congregation in the Sand Creek brick church and communed together as one congregation in apparent harmony. There was, however, shortly prior to that time, some friction between the members of the Sand Creek congregation with reference to the powers exercised by the trustees, elders and deacons of that congregation, in their official capacity, in the conduct of the business of the congregation, but no complaints were brought before the congregation, and upon those matters there was at least apparent harmony until in the year 1904. In the fall of 1903 a question arose in the congregation as to the propriety of using the brick church as a place in which to hold a singing school. The officers of the church,—that is, the trustees, elders and deacons, who had acted as such and had controlled the affairs of the church organization for many years,—opposed the holding of the singing school in the church building at that time and refused to permit its use for that purpose. After some considerable discussion upon that question, in the spring of 1904 the dissensions which it appears had existed in the congregation broke out and the congregation divided. It was then discovered that the or-

ganization, under the statute, which had been attempted by the Sand Creek congregation in 1897 as the "Church of Christ of Sand Creek" was invalid by reason of the fact that the formalities required by the statute to effect a legal incorporation had not been observed, and there were then made hurried attempts by each faction to effect an incorporation under the statute, the minority as the "Christian Church of Sand Creek" and the majority as the "Church of Christ of Sand Creek," and separate meetings were held by these factions, and the papers required by the statute to be executed and filed to effect an incorporation of a religious body were executed by each faction and were filed in the office of the recorder of deeds of Shelby county and recorded. The majority, who were incorporated as the "Church of Christ of Sand Creek," were in possession of the church property, and the minority, who were incorporated as the "Christian Church," were refused the use of said church building by the majority and thereafter held their meetings in a school house near by. This litigation resulted, and the sole question here to be decided is, does the brick church erected by the Sand Creek congregation in 1874, and the land upon which it stands and which is appurtenant thereto, belong to the plaintiff in error the "Christian Church of Sand Creek" or to the defendant in error the "Church of Christ of Sand Creek?"

The courts of this State are powerless to pass upon the questions of difference between the contending factions of the Sand Creek congregation except in so far as property rights are involved, (*Ferraria* v. *Vasconcelles,* 23 Ill. 403; *Ferraria* v. *Vasconcellos,* 31 id. 25; *Kuns* v. *Robertson,* 154 id. 394,) as it will readily be conceded by all that every person in this country has the full and free right to entertain any religious belief, to practice any religious principle and to teach any religious doctrine which he may desire, so long as it does not violate the laws of morality and property and does not infringe upon personal rights. (*Watson* v. *Jones,* 13

Wall. 679.) It is not, therefore, within the province of this court to pronounce judgment upon the doctrines taught by Alexander Campbell and believed and practiced by his followers, or to determine which faction of the Sand Creek congregation, in their practices in their church congregation, from an ecclesiastical standpoint, is correct, as the courts have no concern with the questions whether a religious congregation is progressive or conservative; whether a musical instrument shall be present or absent during church services; whether the preacher shall be selected from the congregation or shall be a person employed by the congregation for a stated time at a stated salary; whether missionary societies and Sunday schools shall have separate organizations from the church congregations or not, or whether the funds necessary for the support of the church shall be contributed wholly by its members or raised in part by fairs and festivals. All those questions, and kindred questions, must be left to the determination of the church congregation. Incidentally, however, those questions in this case bear upon the ownership of the church property here involved, and for the purpose of determining to which faction of the Sand Creek congregation the property here in question belongs, the practices of the Sand Creek congregation in the past have a bearing.

When the members of a religious congregation divide and one faction breaks away from the congregation and forms a new organization, the title to the property of the congregation will remain in that part of the congregation which adheres to the tenets and doctrines originally taught by the congregation to whose use the property was originally dedicated. (*Ferraria* v. *Vasconcelles, supra; Ferraria* v. *Vasconcellos, supra; Church of Christ* v. *Christian Church of Hammond,* 193 Ill. 144.) Here the property was originally donated to the Sand Creek congregation and has been in use by that congregation from 1834 to 1904, a period of seventy years. When the church site was slightly changed, in 1874, and the brick church erected, the deed to the new

site, which was made in exchange for a deed to the old site, was made to the trustees of the Christian Church of Sand Creek.   We think that fact, however, entitled to but little weight in determining the question to which faction of the congregation the church property should now be held to belong.   At the time the deed was made the Sand Creek congregation had not been incorporated, and the congregation which worshiped at that place at that time was called at times the "Christian Church" or the "Church of Christ," and no question seems to have been raised as to the legal name of the congregation worshiping at that place until about the time this suit was commenced.   While the deed was made to the trustees of the "Christian Church," and the words "Christian Church" were placed for a time above the church door, the business of the Sand Creek congregation, such as issuing of church letters to departing members, appears to have been carried on in the name of the "Church of Christ." At the time of the execution of the deed the Sand Creek congregation had trustees, elders and deacons of the church, and the title to the property conveyed by James A. Turrentine and wife to the trustees of the Christian Church clearly was intended by the grantors to be vested by said deed in said trustees for the benefit of the members who formed the church congregation known as the "Sand Creek congregation," and although said Sand Creek congregation was not incorporated, the deed was not void for the want of a grantee, the conveyance being in the nature of a charitable trust, and all the members of the Sand Creek congregation became, by virtue of the execution of said conveyance, beneficiaries in the property then conveyed.   *Ferraria* v. *Vasconcellos,* 31 Ill. 25;   *Alden* v. *St. Peter's Parish in the City of Sycamore,* 158 id. 631.

It is also clear from the evidence that the Sand Creek congregation, from the inception of its organization to the time of the division, in 1904, as a congregation, was opposed to any innovations in the practices of the church,—that is,

the congregation only acted in matters of practice in accordance with what they believed to be the positive commands of God as found in the Old and New Testaments, and the defendants in error, at the time of the division of the congregation, and since that time, have maintained that position, and appear to have maintained from the beginning, and now maintain, the tenets and doctrines which were taught in the Sand Creek congregation at its organization and which have been maintained and taught in that congregation all through its history, and that the plaintiffs in error, since their separation from the Sand Creek congregation, have taught and practiced what are known and characterized as the "innovations." This being true, defendants in error were rightfully held by the trial court to be the successors and representatives of the original donees of the church property originally donated to the Sand Creek congregation and the lawful owners of said property, and the plaintiffs in error having seceded from the Sand Creek congregation and effected a new organization where the innovations are taught and practiced, were properly held by the court to have abandoned all interest in the property which belonged to the Sand Creek congregation at the time they left the organization and effected a new organization. *Ferraria* v. *Vasconcelles, supra; Ferraria* v. *Vasconcellos, supra.*

It is, however, urged that the great majority of the church congregations which are professed followers of Alexander Campbell have adopted, in practice, the innovations from the practice of which defendants in error hold aloof, and that the plaintiffs in error are in accord with the spirit of a more enlightened age than the defendants in error, and that their practices are in harmony with the later teachings of Alexander Campbell himself upon the subjects upon which they differ in their practices and belief from the defendants in error. It appears from the undisputed testimony that the churches organized in accordance with the teachings of Alexander Campbell were all congregational, and that these

congregations, including the Sand Creek congregation, were, and always have been, sovereign in all matters pertaining to church government,—that is, each congregation has the right to determine for itself what its practices in the manner of conducting the worship of God in the congregation and its church business shall be, so long as such practices are not in conflict with the positive commands of the Bible. Such being the fact, although it might appear that every congregation bearing the name "Christian Church" or "Church of Christ" organized throughout the land, other than the Sand Creek congregation, had adopted the practices heretofore referred to, the action of those congregations would not be binding upon the Sand Creek congregation unless that congregation had endorsed and adopted them for the government of the Sand Creek congregation. In July, 1904, after the plaintiffs in error had broken away from the Sand Creek congregation, the members of the Sand Creek congregation who had not seceded met and pursuant to the statute incorporated as the "Church of Christ of Sand Creek." By that act of incorporation all the property of the Sand Creek congregation became immediately vested in that corporation, (*Dubs* v. *Egli*, 167 Ill. 514,) and its title thereto was not divested by the act of the plaintiffs in error in subsequently incorporating as the "Christian Church of Sand Creek." *Happy* v. *Morton*, 33 Ill. 398.

In the determination of the question here involved it must be borne in mind that this is a contest between two incorporated church organizations, and that the only question that this court can deal with is, in which corporation is the title to the church property which formerly belonged to the Sand Creek congregation now vested? From a careful examination of the record in this case, which contains over sixteen hundred pages, we have reached the conclusion that the learned chancellor who heard the case below rightfully reached the conclusion that the title to that property, at the time of the commencement of this suit, was in the defendant

in error the "Church of Christ of Sand Creek," and not in the plaintiff in error the "Christian Church of Sand Creek," and rightfully so decreed.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*