William Wright et al., Plaintiffs-Appellants, v. J. Edwin Smith et al., Defendants-Appellees.

Term No. 54-O-22.

Fourth District.

February 1, 1955.

Released for publication March 3, 1955.

471

Chester Crabtree, of Pontiac, and Murray & Stephens, of Centralia, for appellants.

Meyer & Meyer, and E. Harold Wineland, all of Flora, for appellees.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This cause comes to this court on transfer from the Supreme Court after an original appeal to such court.

Plaintiffs filed an action in equity in 1950, seeking to have the circuit court of Marion county declare that the title to a church building and a parsonage in Salem, Illinois was vested solely in the twenty-six plaintiffs, to the exclusion of certain defendants, and also the other members (383), of the Christian Church at Salem, who were not made parties to the action. Plaintiffs are members of the Christian Church at Salem. The defendants, including the minister of the church, elders, deacons, and trustees of the church at the time of the filing of the complaint, are being sued in their individual capacity. Another defendant is also, First Christian Church of Salem, a corporation.

The action resulted from a schism in the Christian Church at Salem. It is alleged in the complaint by plaintiffs that there were eighteen separate purported departures by defendants from the doctrines, tenets, and practices held by the founders of the church in 1866 and held by the members at the time of the acquisition of the church building site in 1879. It is sought in this proceeding to perpetually enjoin defendants from setting up any right, title, or interest in the church property and from interfering with plaintiffs holding religious services in the building. A motion to dismiss the complaint was denied in the trial court.

In the answer filed on behalf of the original defendants (no answer being filed by the not-for-profit corporate defendant), it was asserted, among other things, that the trustees of the Church of Christ at Salem and certain beneficiaries of the trust, that is, the 383 members of the church, were not before the court and were necessary parties to the suit. A counterclaim was also filed which stated that the church property at Salem was impressed with an implied trust that the members could by majority vote determine the mode or manner by which missionary work would be carried on, and that plaintiffs had sought to destroy this authority so that missionary work could only be carried on in one manner, that is, through certain specific missionary societies. After the answer was filed, trustees of the church were added as parties defendant, but the other party beneficiaries were not made parties.

A great deal of evidence was heard by the court. From such evidence it was shown that the majority of the official board and the congregation voted to adopt a written constitution setting up certain articles of faith, which plaintiffs contend are contrary to the doctrines and tenets of "Disciples of Christ." The official board of the church also adopted a resolution in which it denied the missionary societies and the auxiliary organizations the right to use the church building for meetings, and also organized a new not-for-profit corporation which recites, in its articles of incorporation, "this church is not affiliated with any congregational or inter-congregational organization or unit thereof, either local, State, National, or Inter-national." The plaintiffs now worship in a room in the courthouse in Salem, and defendants worship in and are in possession of the church building and parsonage. The court below did not find the title to the church premises to be in either group, but entered a decree dismissing for want of equity, both the complaint as amended and the counterclaim of defendants.

473

It is contended on appeal in this court that the circuit court of Marion county erred in, (first) in not finding that the title to the real estate of the church was vested in the plaintiffs as members of the old religious corporation, "The Church of Christ," and not in the new religious corporation, the "First Christian Church"; (secondly) in not finding that defendants in attempting to incorporate the church under the name "First Christian Church" abandoned the old religious corporation and set up a new corporation, and that this constituted a withdrawal by defendants from the old corporation; (third) in not finding that by adopting the constitution with its articles of faith, defendants had departed from established doctrines and tenets of the church; (fourth) in not finding that defendants have forfeited all their rights to the real estate of the church; and (fifth) in not finding that in closing the doors of the church to the members of the local missionary society, defendants abandoned and violated the doctrines and modes of worship for which the church was originally dedicated.

The court below in determining this cause, specifically stated that his findings in the case were ultimately based on the fact that the court has no jurisdiction of this property, except in support of the doctrine that one or the other of the parties have departed from the faith of their church; that the entire controversy finally seemed to center on the question of permission to have a local branch of a missionary society which has been in force in the church for some years and that such missionary society has been abandoned and at times revived in the past, and the court therefrom concluded that there was no such departure as would require or justify a court in assuming the right to determine that the property belongs either to plaintiffs or defendants.

Courts have exercised no jurisdiction over ecclesiastical matters and do not sit as courts of review on ecclesiastical questions or disputes, except when

some property right is involved. Under the guaranty of separation of church and State the constitution preserves the right to freedom of religious expression (First Presbyterian Church v. First Cumberland Presbyterian Church, 245 Ill. 74). The courts have pointed out that all who unite in such religious associations when so organized impliedly consent to submit to such ecclesiastical government. It is further noted that when a church, strictly congregational or independent in its organization, is governed solely within itself either by a majority of its membership or by such other local organism as it may have instituted, and owns property with no other specific trust attached to it than that it is for the use of the church, the numerical majority of the membership of the church ordinarily controls the right to the use of such property (German Evangelical Lutheran Trinity Church v. Deutsche Evangelisch Lutherische Church, 246 Ill. 328; Christian Church of Sand Creek v. Church of Christ of Sand Creek, 219 Ill. 503).

As an exception to such rule courts will raise and enforce an implied trust so that the majority faction cannot effect a fundamental change of doctrine nor permit a change of denomination. The departure from fundamental faith, however, must be a substantial one and it must be one involving essential matters of faith and fundamental doctrines (Happy v. Morton, 33 Ill. 398; Little Grove Church v. Todd, 373 Ill. 387). It has been noted also that a mere severance of a voluntary ecclesiastical connection by the majority faction of an independent society, assuming that it does not involve a fundamental change of doctrine, does not in itself involve any diversion of the property from the implied trust (Lawson v. Kolbenson, 61 Ill. 405; Ragsdall v. Church of Christ in Eldora, 244 Iowa 474, 55 N.W.2d 539).

It appears from the record in this cause that plaintiffs have not been deprived of any substantial rights

as members of the church and are in fact still carried on the membership record as members of the church. The record shows that the fundamental faith of plaintiffs and defendants is essentially the same, and some of the plaintiffs have in fact continued to exercise their rights of attending the church following the controversy which led to the withdrawal. It is also apparent that the action of the congregation in regard to the missionary society did not foreclose the rights of plaintiffs as members of the church in any manner, except as to the use of the church property or the church name for purposes which the congregation determined were contrary to the best interests of the local church. Plaintiffs could, however, notwithstanding such action, still worship within the church; could still support outside agencies; could still assemble as a missionary society outside of the church premises; and do a number of other things so long as they did not involve the local church by their action. It is apparent from the record that the churches of the type before us are all congregationally governed, and each independent church congregation has authority to determine what its customs and practices shall be in regard to matters such as missionary society matters; that such matters are admittedly matters of expediency, or so-called "nonessentials" as contrasted with "matters of faith." As to nonessential matters the local congregation has power of decision, and a practice or custom therefore could not become a matter of fundamental faith or doctrine in a local church by reason of its continued observance for many years.

██ It is obvious from an examination of the record that the conclusion of the court below that there was no substantial departure by defendants from the essential faith of the local church as it existed at the time of its origin, is sustained by the record. The evidence fails to support plaintiffs' contention that the church property was being devoted to doctrines, tenets,

or practices contrary to the purposes of the founder. The rights of the parties in equity were properly determined as of the date of the entry of the decree. (Darmstadt v. Horwitz, 298 Ill. App. 523; Town of Kaneville v. Meredith, 361 Ill. 556.)

A motion on behalf of appellees to strike the report of proceedings was taken with the case for consideration. Such motion is denied.

The finding and decree of the circuit court of Marion county will, therefore, be affirmed.

Affirmed.

BARDENS and SCHEINEMAN, JJ., concur.