STANSBERRY, ETC. ET AL. *v.* MCCARTY ET AL.

[No. 29,131. Filed April 28, 1958. Rehearing denied June 4, 1958.]

340

*Hollowell & Hamill,* of Indianapolis, and *Vance M. Waggoner,* of Rushville, for appellants.

*Virgil J. McCarty, James P. Mullin,* both of Brookville, and *Charles A. Lowe,* of Lawrenceburg, for appellees.

ARTERBURN, J.—This cause was transferred to the Supreme Court under Burns' §4-209, 1946 Replacement.

Regrettable to say, this lawsuit has its origin in a church. It is a case involving a controversy among members of the Christian Church or Church of Christ of Brookville, Indiana. The complaint is quite copious, consisting of approximately 24 rhetorical paragraphs, with numerous sub-paragraphs. It is brought by what appears to be a minority of the congregation, who disagree with the remainder of the congregation over certain church beliefs and the management of the church affairs, including the retention of a minister, support of certain missionary societies and conventions and other matters of considerable detail, some of which will appear later. The complaint and also the special findings of fact go into a history of a religious "movement" by Alexander Campbell and his father, starting in the early part of the nineteenth century. As a result of these teachings there sprang up and developed a group of churches using the names interchangeably— Christian Church, Disciples of Christ and Church of Christ. The latter name should not be confused with

the Churches of Christ, a denominational religious sect which broke away from this group in 1906 on two major differences which forbade the use of instrumental music in services and the support of organized missionary activities. The Brookville Christian Church has used the above mentioned names interchangeably. The title to the property first taken by the Brookville Church in 1886 was made to the Trustees of the Church of Christ, while the deed to the present property in controversy was made to "the Trustees of the Brookville Christian Church." The deeds are of no aid in the solution of the problem here.

We draw from the briefs of counsel and their oral presentation that within those churches organized as a result of the "Campbell Movement" (or Christian Church movement) as the years passed, there developed some differences in the means by which the objectives of the church were to be attained. The dispute created differences not only in the Brookville Church, but in the "movement" generally among the Christian Churches. One of these groups, because of its prominence, was given the name "co-operative" group. The complaint alleges that the plaintiffs below (appellees here) adhere to the "co-operative" group; that the members of this group have as their belief that the church should co-operate with other religious organizations, including particularly certain missionary societies and conventions, in order to attain a unity of all Christians and a restoration of a united Church of Christ. The appellants, who were defendants below, oppose this "co-operation" or "co-operative movement."

Both the complaint and special findings of fact go into considerable detail in outlining the acts which manifest this difference in belief as it took place in the Brookville Christian Church. It appears that the con-

troversy, in the Brookville Christian Church has its origin mainly in the activities and preachings of the ministers employed by the church since 1930. It has been accentuated more recently by the agitation of O. George Stansberry, the pastor at the time this action was brought, and who is an appellant herein. The complaint and special findings state in substance that one of the appellants, O. George Stansberry, as minister, preached against the doctrines of "co-operation" and, among other acts, wrongfully conspired and used his influence in elections to change the by-laws so as to maintain himself and his followers (the appellants) in control of the church and the church property.

For example, finding No. 21 states that Stansberry, at a meeting of the deacons and elders prior to the annual meeting of the congregation, "caused said Board to adopt a procedure requiring approval by said Board, in advance, of all names suggested for Church officers; . . . that said O. George Stansberry should be nominated and elected as Chairman of the nominating committee and that he should preside at the annual meeting of the congregation; . . ."

Finding No. 22 recites the confusion and conflict at the annual church meeting on October 3, 1948, stating that appellant Stansberry attempted to preside and was challenged and voted out; that thereafter he occupied a seat near the succeeding presiding officer and prompted and advised him; that nominations were refused from the floor; ballots were not fairly distributed; during the argument and confusion the pipe organ was played so loudly it was impossible to conduct the meeting and many members left, "that the method of conducting the said annual congregational meeting on October 3rd, 1948, was contrary to the usages, customs, practices, and doctrine of the Brookville Christian

Church and constituted a departure from the usages, practices, customs, doctrines of said Brookville Christian Church as they existed at the time the said real estate was acquired. . . ."

We need not detail all this maneuvering and activity on the part of the minister for, if true, as the findings of fact state, it does not reflect any credit upon one whose demeanor should exemplify Christian virtues of tolerance and fellowship far above the standard which is revealed in this record. To say the least, it showed a breach of trust and confidence placed in him by reason of his position, to act impartially and fairly towards all members.

The appellants, defendants below, although recognizing the "co-operative group" in the "Campbell Movement," contend such practice and belief is optional with the members of the "movement" and that "co-operation" is not an essential or fundamental belief or doctrine of the church; that the Campbell or Christian Church Movement is liberal in the areas of individual opinion and permits an unusually wide latitude in belief and interpretation of the New Testament; that within this area it is optional for members of the "movement" to participate in "co-operation" or not, as they may desire or believe.

The general tenor of the complaint and theory of the action is that the appellants, as members of the congregation, have departed from the essential tenets and doctrines of the Brookville Christian Church and have become "a separate and distinct religious sect which has usurped, taken over, intruded into and appropriated unto their own use and purposes, the real estate of the plaintiffs, as above described and are now using the same for the purpose of inculcating, preaching, teaching and promulgating doctrines and beliefs

which are foreign to, and in contravention of those held by the plaintiffs' said church. . . ."

The prayer of the complaint is that the court impose a trust on all the property of the Brookville Christian Church for the benefit of the plaintiffs and all other persons adhering to the beliefs and doctrines as held by the plaintiffs and the teachings of Alexander Campbell; that Stansberry be "perpetually" enjoined from serving as pastor and that appellants "be enjoined from intruding into the church property or using the same in any way."

The trial court rendered judgment for the appellees, plaintiffs below, and upon request made a special finding of facts which consists of 42 numbered paragraphs and is as extensive and voluminous as the complaint in describing the details. What has been said affords some background for an understanding of this controversy out of which this appeal arises. We shall not encumber the record with a recital of the procedural steps taken to raise the issues presented on this appeal since no substantial question is urged in that field.

The courts of this state have been hesitant to interfere in church or religious affairs. Courts have no jurisdiction over ecclesiastical matters nor the internal management of the affairs of any organization except when personal liberty or some property right is jeopardized. The complaint in substance says the minister attempted to persuade or influence a majority of the church members and its board to change the by-laws and take other actions objected to by appellees. Normally, the majority rule prevails under our democratic processes. It follows that any interested party has a legal right to persuade the majority to accept his views. Meetings are held for the purpose of discussion, argumentation and persuasion,

resulting in the enlightenment of all. There can be no legal wrong from such attempts at persuasion.

Where the majority rules, it is true, it may override the wishes and desires of the minority and even become tyrannical and sit in judgment of its own actions within the organization. The majority rule is final unless it violates property rights or liberties protected under the constitution and laws of this state. Only then does a court have jurisdiction to review tyrannical action by a majority over the minority. Courts will not interfere in the majority rule of an organization except to protect individuals in their contractual relationships, property rights and liberties in connection therewith. The rights which exist by virtue of the constitution or laws of this state cannot be overridden by a majority rule of any organization—church or otherwise. *State ex rel. Givens, etc.* v. *Marion S. Ct., Rm. 1* (1954), 233 Ind. 235, 117 N. E. 2d 553; *Ashman* v. *Studebaker* (1944), 115 Ind. App. 73, 56 N. E. 2d 674; *Smith et al.* v. *Pedigo et al.* (1896), 145 Ind. 361, 33 N. E. 777, 44 N. E. 363; *Mt. Zion Baptist Church* v. *Whitmore* (1891), 83 Ia. 138, 49 N. W. 81, 13 L. R. A. 198; 45 Am. Jur. §61, Religious Societies. Sometimes an organization adopts a constitution, by-laws or a discipline which gives protection to a minority against the unfair or unjust rule of a majority in certain situations. This is not the case of this church.

One of the special findings of fact (No. 18) states in substance that the Brookville Christian Church, as established under Alexander Campbell, is congregational in character and autonomous. There is no recognition of any governmental hierarchy of any nature binding upon a local congregation except its own elected officers. It thus follows that normally the majority rule would prevail in the management of

the church affairs, the fixing of its by-laws and constitution or discipline. It is also true, and well established in the law, that a court will grant relief against the misuse of church property where it has been taken over by a group and a fundamental departure from the original doctrines and faith of the church has been made. In other words, trust property may not be diverted to a different and alien use from that for which it was dedicated or intrusted. The beneficiaries under the trust and church members have a property interest which the law protects.

There must be such a substantial departure from the fundamental tenets of the church that a violation of the trust and a perversion of the property has taken place in order to authorize equitable jurisdiction in granting relief asked in such a case. Judge Crumpacker has set forth an excellent statement of these principles of law in *Ashman* v. *Studebaker* (1944), 115 Ind. App. 73, 56 N. E. 2d 674. *Lamb et al.* v. *Cain et al.* (1891), 129 Ind. 486, 29 N. E. 13; *Little Grove Church* v. *Todd* (1940), 373 Ill. 387, 26 N. E. 2d 485; *Franklin* v. *Hahn* (1955), — Ky. App. —, 275 S. W. 2d 776.

Our duty in this case is not to pass upon the merits, the beliefs or practices of any part or all the members of this or any church. Our duty and that of the trial court is to determine what beliefs, tenets or doctrines were required for membership and as a result are therefore fundamental to the Brookville Christian Church. The next step is to decide whether or not the appellants, by control of the church meetings, forced a departure therefrom and a violation of the terms of the trust of church property.

The main controversy and the difference between the parties in this case revolves about the "co-operative

movement" and whether or not it was a fundamental tenet and doctrine of the Brookville Christian Church. A solution of this problem must be first resolved.

Referring to the special findings of the trial court, Finding No. 12 defines the term "co-operation" as used in this church. It reads as follows:

> "The participation by the several churches and congregations in support and furtherance of the objects of these missionary societies was referred to as 'co-operation,' and the various churches were known in the movement as 'cooperative churches' or 'non-co-operative churches.' "

Findings 8 to 11 set forth the work and teachings of Alexander Campbell and that certain missionary societies were organized by him for the purpose of spreading his teachings, including "co-operation." Finding No. 15 states "That at the time of its organization in 1886 said Brookville Christian Church adhered to and practiced the doctrines and teachings of Alexander Campbell." Under Finding No. 16 such adherence prevailed at the time of the acquisition of the present church property in 1915.

Finding No. 14 states in part "That co-operation as above defined was one of the practices of the Brookville Christian Church from its organization in 1886" until the present controversy which orignated in 1930, and that when the appellant Stansberry became a member of the Brookville Christian Church he preached against such practice; "that said teaching and practice was schismatic and contrary to the established usage, customs, practice and beliefs of said Brookville Christian Church at the time it acquired said real estate and erected the present Church building; . . . " However, we are further confronted with Finding No. 10, which states that participation in such co-operative practice "was

purely and wholly voluntary upon the part of each congregation." One may draw therefrom that at no time was it a departure from the "Campbell Movement" or the teachings of Alexander Campbell to decline or refuse to participate in the co-operative practice or movement.

On the other hand, we have special Finding No. 7, stating plainly and unequivocally what were the "*only* essential or requirements" for membership in the church. The pertinent part of the finding states:

" . . . These Churches were bound together by no governing body or organization, but only by their adherence to the belief that they were achieving the end and purpose of their Faith which was Christian unity. Each of these congregations was wholly free and autonomous. Congregational autonomy was one of the principles or beliefs to which all of the congregations gave assent. Each of these congregations recognized and believed that the *only* essential or requirements for admission to fellowship was (1) belief in Christ, (2) repentance, (3) Confession, (4) Baptism by immersion and (5) Acceptance of the Holy Spirit." (Our italics.)

With the "*only*" essentials of belief for membership limited to the five itemized tenets or principles, we are not permitted to add any others including "co-operation" as an essential or fundamental doctrine.

Appellees urge, however, that for them to prevail in this case it is not essential that there be a departure from "the one and only doctrine or fundamental belief upon which the Church is founded" and instead urge that "The usages, customs, principles and practices which were accepted and adopted by the Church *before the division took place,* constitute the standard for determining which of the contesting parties is in the right." (Our italics.) We cannot agree

with the contention advanced by the appellees as applied to the legal rights of the parties in this case.

It is hardly necessary to remark that in any church there are many customs, practices, usages and beliefs that are not fundamental requirements for membership.

Throughout the findings we have additional statements of other violations of practices, usages and customs which were "adhered to" and were in existence prior to the controversy and at the time of the organization of the church. The phraseology used in connection with such statements is substantially the same as that used in connection with the practice of "co-operation." Some of these other findings using the same phraseology concern themselves to a large extent with the action of the church board "at the urging and behest of said O. George Stansberry" and their adoption of a method of procedure, by-laws and qualifications to vote at annual meetings and elections of the congregation, which "constituted a departure from the usages, customs, practices and principles of said Brookville Christian Church as they existed at the time of the conveyance to said church of the real estate involved in this action." Such details would not reasonably be matters of fundamental doctrine but rather of procedure and organization.

So far as we can discover in the findings there is no stronger statement with reference to "co-operation" than that such practice was one of those indulged in or "adhered to" by the Brookville Christian Church at the time it was established. This is not the same as a finding that it is a fundamental belief of the church and a requirement for membership at the time the trust in the property was created. We fail to discover even a finding that "co-operation" was a practice upon which

the church was "founded." The main tenor of the findings is to the effect that it was in existence as a practice. or usage when the church was organized or founded—not that the practice was so fundamental that the church was founded upon it and the trust property so dedicated. In this connection we point out that Finding No. 33 states in substance and No. 32 states specifically that: "one of the doctrines, teachings, and practices of said Brookville Christian Church was that differences of opinion on non-essential matters was not a ground of denial for fellowship." The evidence underlying this finding apparently is that:

"When members are accepted into any one of the Christian Church congregations, he is not asked to subscribe to any set of manmade principles, creeds, tenets, articles of faith or profession of faith. Our sole doctrine and creed, our sole teaching in the Christian Church is the New Testament Scripture. As to matters which are not embraced in the teaching of the New Testament scriptures our Christian Church Movement is unique in that it says that on those matters the individual may have his own opinion. These matters which are not of the Scriptures are called, in our teachings, matters of opinion."

This seems to be the general sense of the findings as to liberty of opinions on belief among the members. We conclude therefore that "co-operation" is a manmade principle not specifically mentioned in the New Testament and thus becomes a matter for individual opinion. Finding No. 38 states that "membership in the church is permanent." There appears to be no method by which a person once a member may be expelled or excommunicated.

In view of such findings it is the court's duty to reconcile them, insofar as possible, and not draw con-

clusions which are inconsistent or contradictory with other findings. 89 C. J. S. Trial, §636, p. 468.

We must hold in view of Finding No. 7, which plainly states what are the *only* essential or requirements" for church membership, that "co-operation" is not a fundamental tenet or requirement for membership in the Brookville Christian Church. Participation in such practice is "purely voluntary" under the Campbell Movement. Non-support of the practice certainly is not a ground for expulsion.

A recital that certain practices, including "co-operation," were in existence when the church was organized is not the same as a finding that it was an essential and fundamental doctrine upon which the church was founded. It would be a rare case to find all members of any organization without divergent and varied beliefs, although they adhere under one or more common principles as requirements for memberships. So long as man thinks and speaks, there will be various shades of meaning and understanding given to words and phrases flowing from the teachings of others, and particularly those of the Bible. As time passes and people become more enlightened, some of the translations and meanings to be drawn from these words vary and change. It would be unusual to find no changes and variations in the interpretation of the beliefs and practices in churches from that which existed a hundred years ago. For the court to intermeddle in a church's organization merely because there has been a change in "the usages, practice, customs, doctrines and tenets" of the church as they existed at the time it was organized, would be officious and totally unwarranted, unless it is shown also that they were requirements for its fellowship and there has been a

fundamental departure therefrom and a violation of the trust of church property.

Many churches a hundred years ago objected to dancing, cigaret smoking and many other customs and practices that today by many of the same churches are considered of minor importance. What common opinions or customs existed at the time of the founding of a church are not necessarily what was fundamental at the time.

We are not unaware of Finding No. 39, which reads as follows:

"The defendants have completely departed from the original doctrines, beliefs, usages and practices of the Brookville Christian Church and said defendants constitute a new and different Church from the Brookville Christian Church and are a schismatic group in control of said Church advocating, teaching and practicing doctrines and practices of said Church at the time it acquired the real estate involved herein and at the time of the erection of the Church building."

The finding is ambiguous.

Consistent with our duty to reconcile the findings we note that this finding does not say that there has been a departure from any fundamental or essential belief of the Brookville Christian Church. As stated above, there may be departures from "original" beliefs or practice that were not fundamental or essential requirements for membership at the time the trust was created. The statement in the above finding "and said defendants constitute a new and different Church" is nothing more than a conclusion which is contrary to specific findings of fact therein. We must follow such construction in view of Finding No. 7, which sets forth the "only" essentials of belief necessary for membership in the church. In all the

cases dealing with Christian Churches which we have been able to examine, the decisions seem to be unanimous in holding that a division of opinion over the support of missionary societies or other church organizations described as "co-operation" is not a matter of fundamental belief and is not a required tenet for membership in the church. Such a difference in views does not "constitute a new and different church."

Churches based upon the Campbell Movement appear to have no constitution or fundamental discipline which define in written words their basic tenets or doctrines. Most of the cases cited to us in this appeal deal with churches whose organic deeds, acts, constitution, or discipline are in writing. In such cases the task is less difficult in defining the fundamental doctrine and determining any departure therefrom. Such is the case of *Ashman* v. *Studebaker, supra.*

A case very similar to that here, which arose in a church having its origin also in the "Campbell Movement" and in which the same differences in opinions arose, is that of *Franklin* v. *Hahn* (1955), — Ky. App. —, 275 S. W. 2d 776. The court said in that case in denying equitable relief:

"The appellees claim that the Chaplin Christian Church is a part of the denomination known as the 'Disciples of Christ' founded by the followers of the religious leaders, Alexander Campbell and Barton W. Stone. Appellants agree that the Chaplin Christian Church was founded by the followers of Campbell and Stone, but urge that this particular church has no connection with the denomination known as the 'Disciples of Christ.' Appellants contend that it was the purpose of Campbell and Stone to restore the undenominational Christian Church as revealed in the New Testament and not to establish the 'Disciples of Christ' church, or any other particular sect or denomination. They claim that the 'Christian Church'

and the 'Disciples of Christ' church are separate religious bodies and do not have the same doctrines or beliefs. Appellees, on the other hand, assert that the 'Disciples of Christ' and the 'Christian Church' are the same religious group which is generally known by either of these names. Appellees desire to maintain affiliation with the various agencies of the 'Disciples of Christ,' particularly the 'United Christian Missionary Society.' Appellants do not approve of supporting these organizations.

. . . . .

"The appellants and their followers do not believe in supporting the United Christian Missionary Society and other organizations which are generally supported by the 'Disciples of Christ.' The Chaplin Christian Church has in fact ceased to support these organizations. The learned Chancellor held that the appellants, by refusing to support certain missionary societies, schools and conventions which appellees desired to support, were failing to adhere to the fundamental doctrines of the Chaplin Christian Church. This church, having the congregational or independent form of government, had the right, if the majority of the membership so desired, to withhold support from any voluntary society or organization. From the evidence presented, the 'United Christian Missionary Society' and the societies and schools in question would appear to be voluntary organizations."

In *Ragsdale* v. *Church of Christ* (1953), 244 Ia. 474, 55 N. W. 2d 539, we have another case involving the same kind of church with the same factual dispute. In reversing the trial court, which held, as did the trial court here, that court said:

"This may be an over-simplification of the controversy, but it at least brings out the question involved, viz., affiliation with other organizations of the same denomination. We do not agree that co-operation with other Churches of Christ, or Christian Churches, through any particular organization, such as 'Iowa Christian Convention,' 'Iowa Christian Missionary Society,' 'United Christian Missionary Society' or 'International Convention

of Disciples of Christ, Inc.' may be or become a matter of fundamental faith upon which the majority of an individual church may not depart; or that the property of the individual autonomous church is held in trust for the purpose of promulgating or perpetuating any particular manner of co-operation.

"The very independent and autonomous character of the individual church precludes the possibility of any *doctrine* of compulsory support of such institutions, however worthy and even necessary they may appear to be."

There are other cases involving Christian Churches supporting this position: *Christian Church* v. *Church of Christ* (1906), 219 Ill. 503, 76 N. E. 703; *Wright* v. *Smith* (1955), 4 Ill. App. 2d 470, 124 N. E. 2d 363. We are limited to the special findings in the determination of the question here and consequently can find no basis therein for the trial court's conclusions that "the law is with the plaintiff."

We have dealt with the questions herein as if all the appellants alike were responsible for all the acts, statements and preachings of appellant Stansberry, yet we add at this point that we have failed to discover in the special findings any statement that the appellants employed Stansberry or that the appellees objected to his employment at the time, or any other fact showing how all appellants are responsible for his preachings, statements, or acts of which most of the special findings are composed. The judgment of the trial court operated against all appellants alike, excluding them from the church property although specific and separate relief against Stansberry by way of injunction was requested, as well as other relief against all of the appellants.

There is still another infirmity in this case which makes a new trial necessary. The complaint is one

founded in theory upon equitable relief, yet the judgment entered by the court is one at law, which states that the plaintiffs "are entitled to the immediate possession of the real estate . . . from the defendants" and that the plaintiffs are entitled to "a writ of restitution . . . to put the plaintiffs in possession of said real estate." This is plainly a judgment which is normally rendered in a possessory action or ejectment at law. The appellees in their brief state that it "is an action in equity to impress and enforce an ecclesiastical trust upon the real estate." The prayer of the complaint also makes this clear. It asks that the court "impose a trust" of the church property in favor of the plaintiffs and those adhering to similar beliefs "and that the defendant minister Stansberry be perpetually enjoined from serving and acting as pastor of said church; that the defendants be enjoined from employing any pastor who does not teach, hold and believe the beliefs, practices and tenets of the original Brookville Christian Church." The complaint does not state that the appellants (defendants below) were dispossessed, excluded or ousted from the church by any of the appellees. It does not ask that the trustees as the legal owners be restored to possession by reason of having been ousted from possession.

The evidence fails to reveal any ouster or dispossession by either of the parties in this case. The evidence does show that at an annual church meeting on October 3, 1948, part of the plaintiffs were present, took part in the election and acted as tellers; that after the election some of the plaintiffs went out of town to another meeting place and held an election and elected the losing candidates, including appellees (plaintiffs below) Walter McCarty, Howard R. Mullin and James

P. Mullin as Trustees of the Brookville · Christian Church.

There is no evidence that anyone was excluded at any time from any of the meetings held in the church property by either of the groups opposing each other in this case. In fact there is direct testimony coming from the appellees in which they state they were never excluded from any church meeting. The findings of fact and judgment rendered thereon is therefore contrary to the undisputed evidence. In *Franklin* v. *Hahn, supra,* in reversing the judgment the court said, "There is no evidence that any of the members of the Chaplin Christian Church have been denied the right to use the church for the purpose of worship."

In *Smith et al.* v. *Pedigo et al.* (1896), 145 Ind. 361, 33 N. E. 777, 44 N. E. 363, the court properly granted a writ of possession or restitution where the evidence showed that one faction had forcibly taken possession of the church by breaking down the doors and dispossessing another faction. *Ashman* v. *Studebaker* (1944), 115 Ind. App. 73, 56 N. E. 2d 674, was not an action at law in which any possessory writ was issued, but an equitable action for the declaration of a trust in church property and the removal of a pastor of the church— somewhat similar to the relief asked in the complaint in this case.

We must hold, therefore, that neither the complaint, evidence nor findings of fact support the theory the court used in stating its conclusions of law and in rendering judgment at law. The trial court, in making its findings of fact, conclusions of law and rendering judgment, misconceived the theory of the action and the issues. *Miller, etc.* v. *Ortman, etc. et al.* (1956), 235 Ind. 641, 136 N. E. 2d 17.

The judgment is reversed and a new trial is granted.

Emmert, C. J., not participating.

Bobbitt, Landis and Achor, JJ., concur.

NOTE.—Reported in 149 N. E. 2d 683.