**Fred S. Sorrenson et al., Plaintiffs-Appellants, v. John A. Logan et al., Defendants-Appellees.**

**Gen. No. 10,327.**

Third District.

October 18, 1961.

Rehearing denied November 27, 1961.

Campbell, Markowitz & Lawrence, and Chester Thomson, all of Bloomington (William B. Lawrence, of Bloomington, of counsel), for appellants.

Paul Schillinger, of Bloomington, for appellees.

ROETH, PRESIDING JUSTICE.

This case involves a schism in the membership of the First Baptist Church of Normal, Illinois. Plaintiffs are a minority group of members who are currently holding church services in a building separate and apart from the regular church edifice. Defendants are a majority group of members who are in possession of the church property and are holding services therein. Plaintiffs seek to be declared to be the owners and entitled to the possession and control of the church property to the exclusion of defendants. The Master in Chancery recommended that a decree be entered in accordance with the plaintiffs' complaint. Exceptions to the report were sustained by the trial judge and the complaint was dismissed for want of equity.

██ In controversies of this kind, the rule in Illinois, which is in accord with the almost universal rule, is that a majority of the membership of an independent and autonomous church, may not, as against a faithful minority, divert the property of that church to another denomination, or to the support of doctrines, usages, customs, principles and practices radically and fundamentally opposed to the characteristic doctrines, usages, customs, principles and practices of that particular church, recognized and accepted by both factions before the schism arose, for in such an event the real identity of the church is no longer lodged with the majority group, but rests with the minority adhering to its fundamental faith, usages, customs, principles and practices, before the dissension, who although small in numbers are entitled to hold and control the entire property of the church. Religious societies have double aspects, the one spiritual, with which the courts have no concern, and the

295

other temporal, which is subject to judicial control. Christian Church of Sand Creek v. Church of Christ of Sand Creek, 219 Ill 503, 76 NE 703; Stallings v. Finney, 287 Ill 145, 122 NE 369; Little Grove Church v. Todd, 373 Ill 387, 26 NE2d 485; Wright v. Smith, 4 Ill App2d 470, 124 NE2d 363.

The question for decision therefore is whether or not the defendants and those united with them, as against the plaintiffs have diverted the property of the First Baptist Church of Normal to the support of principles, usages, customs, doctrines and practices radically and fundamentally opposed to the characteristic principles, usages, customs, doctrines and practices recognized and accepted by both factions of the congregation of this particular church before the dissension between them arose, or to another denomination.

With the foregoing legal principles and the limited question in mind we have examined the record in this case. It discloses that the first Baptist church in America was organized in 1639 by Roger Williams in Providence, Rhode Island. Roger Williams came to the Massachusetts Colony from England as a Puritan preacher. In the colony he found certain religious doctrines and rules of conduct to which he could not subscribe. He was charged with heresy and subsequently banished from the colony and thereupon founded the first Baptist church in America. The cardinal doctrine of the Baptist church as enunciated by Roger Williams was that every individual should be free to read the Bible and interpret it as he saw fit, guided only in this interpretation by the Holy Spirit. It would seem axiomatic that inherent in the enunciation of this doctrine is the further doctrine that no one individual or group of individuals may impose their interpretation of the Bible upon others who subscribe to this faith.

Baptist churches adopted the congregational type of government with the local church being completely autonomous in all matters. In other words no superior body controlled the affairs of the local church. In 1814, largely as a result of the growth of the number of churches and the desire to coordinate missionary work, the Triennial Convention of Baptist churches came into being. Local churches sent delegates to this convention which discussed and formulated policy looking toward the good and expansion of the Baptist faith. The actions of this convention were not binding upon local congregations but came to them in the form of recommendations which the local congregation could adopt or not as it saw fit. The advent of the slavery issue in 1845 caused a split between the northern and southern Baptists which had the effect of abolishing the Triennial Convention. Each group organized its own convention and the northern group came to be known as the American Baptist Missionary Union. In 1907 the name was changed to Northern Baptist Convention and again in 1950 was changed to American Baptist Convention. The church at Normal, Illinois, was organized in 1866 and since its organization until the schism arose has always been affiliated with American Baptist Missionary Union and its successors, Northern Baptist Convention and American Baptist Convention. In addition it has been affiliated with Bloomington Baptist Association and Illinois State Baptist Convention, which are affiliates of American Baptist Convention. During this time it sent delegates to the meetings of these bodies who participated in the discussions. In general there was full cooperation with the American Baptist Convention and its various affiliates.

Between 1920 and 1950 a certain group of Baptists became active in the Northern Baptist Convention in attempting to have the convention adopt a Creed or

Creedal Statement which should be binding upon all Baptist members. These attempts were unsuccessful whereupon this minority group withdrew and formed the Conservative Baptist Association of America. It thereupon adopted a Creedal Statement and made it binding upon its membership. Since its organization the Conservative Baptist Association of America has acquired and is operating its own colleges and seminaries, its own Foreign Mission Board and has its own rather comprehensive organization on a local, state and national basis. It is a separate and distinct organization, not associated or affiliated with the American Baptist Convention and its attitude toward the American Baptist Convention is antagonistic.

The present pastor of the First Normal Baptist Church, who is a defendant in this case but who did not testify, came to the Normal church in 1942. Some time after his pastorate commenced he began a course of conduct designed to bring about a severance of the affiliation of the Normal church with the American Baptist Convention and to secure affiliation of the church with the Conservative Baptist Association of America. He began a systematic attack against the American Baptist Convention, its leaders, the Illinois Baptist State Convention, and the Bloomington Baptist Association. He began to neglect to call speakers and visitors from the American Baptist Convention. At about the same time, he began using less American Baptist Convention Sunday School and other literature, and began using more literature published by independent presses. The church had co-operated with the National Council of Churches and the World Council of Churches until three or four years before this suit was filed. The church also worked jointly with the churches of other faiths in the community in a co-operative spirit, including union services, but this co-operation ceased under defendant

pastor in recent years. He disapproved of members belonging to lodges, luncheon clubs, and literary clubs. For many years there were organizations in the church called the Women's Mission Society and the Friendly Circle Class. In 1952 defendant pastor began to criticize and condemn these groups. Changes were made at the instigation of defendant pastor in the method of electing church officers. New members were admitted to church membership without following the established procedure of voting on applicants and indoctrinating applicants in the Baptist faith, history and doctrine. This course of conduct, although gradual and somewhat subtle, was highly successful for in October, 1954, a resolution was adopted severing the ties of the Normal Baptist Church with the American Baptist Convention. The preamble and resolving part of this resolution are significant. It reads:

"Whereas, we are no longer in co-operation with the American Baptist Convention or its affiliates, nor any other modernistic group and shall henceforth have no fellowship nor give any support to the American Baptist Convention or its affiliates, and

"Whereas, we now are desiring to find fellowship with those churches only of like faith and purpose, therefore be it

"Resolved, that we declare ourselves in co-operation and fellowship with the Conservative Baptist Association, on the Local, State and National level, reserving the right to terminate this relationship at any time by majority vote. We move the adoption of this resolution, to take effect immediately."

Following this action a new constitution and bylaws were adopted which contained a Statement of Belief to which all members of the church were required to

subscribe and which also contained the following provision:

> "If the Pastor or any member of the Board or church is found to live or teach contrary to the Word of God and the Statement of Belief of this church, he shall be admonished in love. If there is no repentance, exclusion from the church shall follow."

Thus the present members of the Normal Baptist Church are required to subscribe to the Statement of Belief or face exclusion from the church. While defendants do not deny that this is the practical effect of the foregoing, they counter with the argument that no such action was taken as to plaintiffs but that they chose to worship elsewhere of their own volition. This overlooks the fact that the "Sword of Damocles" hangs perilously suspended. It also overlooks the fact that this principle is entirely foreign to any practice or custom observed by the Normal Baptist Church since its founding, and we think entirely foreign to the cardinal principle enunciated by Roger Williams. There is another facet of this action that is important. From the time of Roger Williams, Baptists have regarded the Bible as their creed. There is testimony in the record by an eminent church historian that the effect according to Baptist beliefs of formulating a Statement of Belief and making acceptance thereof by members mandatory, is to make a creed out of the Statement of Belief. This likewise is contrary to fundamental Baptist doctrine as disclosed by the record.

The issue is raised in this case as to whether the Conservative Baptist Association of America is a denomination so as to bring this case within the rule that a majority of the members of the church may not change denominations to the prejudice of the

minority. Much of the testimony of several distinguished divines is given over to an attempt to define the term "denomination". As might be expected it is equally positive and mutually irreconcilable. The Conservative Baptist Association of America, though in one sense not a separate denomination, is a separate and distinct organization of Baptists growing out of differences of beliefs and doctrines. As heretofore pointed out that is why it came into being. It can hardly be said that the views of those loyal to American Baptist Convention and those loyal to Conservative Baptist Association of America were practically the same and that there was no material difference between them, since in the final analysis they were all Baptists. The effect on this congregation belies such a statement. Severing relations with the American Baptist Convention was a distinct departure from the doctrines, beliefs and practices theretofore followed by the congregation and appears to have been so understood by both groups. The resolution adopted by the Normal church substantiates this fact in that it resolves to in the future affiliate with those churches "only of like faith and purpose".

We therefore conclude that the defendants by doing the things above referred to, and by being in possession of and using the church property for those purposes and plans, have as against the plaintiffs and those united in interest with them, who are a faithful minority, diverted the property of First Baptist Church of Normal to the support of usages, customs, principles, doctrines and practices radically and fundamentally opposed to the characteristic usages, customs, principles, doctrines and practices recognized and accepted by the congregation before the dissension commenced. For purposes of clarity we consider the dissension as having commenced with the advent of the pastorate of defendant pastor.

301

Accordingly the decree of the Circuit Court of McLean County will be reversed and the cause remanded with directions to enter a decree finding that the true congregation of First Baptist Church of Normal consists of the plaintiffs and all other members of the congregation who adhere and submit to the characteristic doctrines, usages, customs, principles and practices of this church recognized and being followed prior to 1942 and decreeing that this true congregation is entitled to possession and title to the church property and enjoining all other persons from interfering with such title and possession. All costs in this case should be taxed against the individual defendants and the decree of the Circuit Court of McLean County should so provide.

One final observation! The record in this case is voluminous and it appears to have been a bitterly contested case. To paraphrase the words of the learned Justice of the Supreme Court of North Carolina in Reid v. Johnston, 241 NC 201, 85 SE2d 114, the heat of the conflict should be over. The time should be here for the First Baptist Church of Normal, Illinois, to exercise the Christian graces of reconciliation, forbearance, brotherly love and unity, according to the admonition given by the Apostle Paul to the Church at Corinth.

Reversed and remanded.

REYNOLDS and CARROLL, JJ., concur.